1. THEATERS AND SHOWS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—
WARNING.

> Guest at bathing beach, unless otherwise warned, had right to
> assume that it was safe for him to use diving board in usual
> and customary manner.

2. SAME—TRIAL—EVIDENCE—SUFFICIENCY.

> Permitting jury to determine reasonable and suitable depth of
> water over which to erect diving board, *held,* not error, under
> evidence.

3. TRIAL—REQUESTS TO CHARGE—INSTRUCTIONS—APPEAL AND ERROR.

> In action for injuries received in using diving board at bathing
> beach, there was no error in refusing defendants' request to
> charge in regard to permanency of injuries and plaintiff's
> duty to mitigate damages, if possible, where charge as given
> gave defendants all they were entitled to in that respect.

4. DAMAGES—EXCESSIVE VERDICT.

> Verdict for $12,250 for personal injuries resulting from fracture
> of three vertebrae in neck, pain and suffering, and possible
> permanent injuries, together with monetary loss, and large
> medical and hospital bills, *held,* not excessive.

Appeal from Wayne; Webster (Arthur), J. Submitted April 8, 1932. (Docket No. 72, Calendar No. 36,362.) Decided June 23, 1932.

Case by George H. Gray against Lester Briggs and another for personal injuries received at a bathing beach. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Bratton & Bratton,* for plaintiff.

*Edward A. Smith* and *Ralph E. Routier,* for defendants.

BUTZEL, J. Defendants Lester Briggs and Max Koch operated a public bathing beach near Detroit,

On liability of keeper of bathing resort for injury to patron,
see annotation in 22 A. L. R. 635; 29 A. L. R. 31; 38 A. L. R. 359;
44 A. L. R. 206; 53 A. L. R. 859; 61 A. L. R. 1295.

On excessiveness of verdict for injuries not resulting in death,
see annotation in 46 A. L. R. 1230.

Michigan. On July 28, 1927, plaintiff George H. Gray paid for a ticket which entitled him to a locker and to the use of defendants' beach. The water near the beach was shallow, and defendants maintained a pier extending out into Lake St. Clair about 1,400 feet, at the end of which a springboard had been placed. Plaintiff's claims are as follows: After donning his bathing suit, he ran out to the end of the pier. He was not warned by signs, or otherwise, as to the depth of the water below the end of the spring-board, and he made no investigation as to the depth. He saw other people diving into the water and assumed that it was of a sufficient depth so as to permit of safe diving. After waiting his turn, he took two or three quick steps out to the end of the spring-board, jumped heavily on to the end of the spring-board, and did what is known as the jack-knife dive into the water. This dive is not an unusual one, but does require deeper water than other kinds of dives. On the first dive, he struck his head against the ground below the water. He was taken out of the water unconscious and removed to the Ford Hospital, where it was found that two or three vertebrae in the neck had been fractured. He suffered intense pain in the hospital. He was laid on a Bradford frame with the pulley around his neck so as to stretch it and he was in a cast for a considerable period of time. Defendants claim that there were signs placed along the pier indicating the depth of the water, which ranged from 4 to 4½ feet at the end of the pier; that a hole had been dug under the springboard so that the water there was approximately 5½ feet in depth; that there was a sign on or near the spring-board indicating the depth of the water; that plaintiff had already dived several times, and that a life guard had cautioned him in regard to the manner in which he dived into the water. As a result of the

accident, plaintiff was at first paralyzed, had no use of the left arm and left leg, and could not move the fingers of his left hand. It was not until a year and a half after the accident that he was able to resume work. He then was able to work about one-half of the time. At the time of the trial, the left foot was in a slightly dropped position and he dragged the toes while walking; the left hand was crippled so that he was unable to open the fingers, and the right side was numb. Plaintiff's condition was described by one of the medical experts as being similar to that of one who had suffered from infantile paralysis. The jury rendered a verdict in plaintiff's favor for $12,250. Numerous errors are assigned on appeal.

Defendants contend that it was contributory negligence as a matter of law for plaintiff to dive in the manner indicated without knowing or making any effort to ascertain the depth of the water. The trial judge reviewed the testimony, and properly instructed the jury that unless they found that plaintiff had been warned by numerous signs and by the life guard, as asserted by defendants and denied by plaintiff, the latter had a right to assume that it was safe for him to use the diving board in the usual and customary manner. *Turlington* v. *Tampa Electric Co.*, 62 Fla. 398 (56 South. 696, 38 L. R. A. [N. S.] 72, Ann. Cas. 1913D, 1213); *Johnson* v. *Hot Springs Land & Improvement Co.*, 76 Ore. 333 (148 Pac. 1137, L. R. A. 1915F, 689); *Bass* v. *Reitdorf*, 25 Ind. App. 650 (58 N. E. 95).

Further error is charged because the jury was permitted to determine the reasonable and suitable depth of water over which to erect a springboard, it being claimed that there was no evidence as to what constitutes a reasonably safe and suitable depth.

The testimony on behalf of plaintiff showed that the water was 3½ feet to 4 feet in depth at the place where he dove, and that the usual depth of the water under diving boards, both at beaches and pools at the Y. M. C. A., public schools, etc., is from 6 to 8 feet. This was sufficient testimony to warrant the submission of the question to the jury.

Defendants requested the court to charge the jury as follows:

"You are instructed that it is the duty of the plaintiff to mitigate his damages as much as possible, and that in considering the question of permanent injuries you must consider the medical testimony to the effect that a minor operation upon the ankle will probably restore to the plaintiff complete use of the ankle and remove the present disability. You therefore are instructed that you cannot consider the condition of the ankle as it is at present as constituting a permanent injury. In considering the injury to the wrist you must also consider the possibility of an improvement in it by reason of medical attention. Outside of the wrist no other permanent injury may be considered."

The court gave the instruction in the following modified form:

"Now, there has been some testimony in this case with reference to an operation or operations which may relieve the condition of the plaintiff in this case. You are instructed that it is the duty of the plaintiff to mitigate his damages as much as possible, and that in considering the question of permanent injuries, you must consider the medical testimony which has been introduced in this case as to the effect of an operation upon the ankle and the probable result of such an operation. And, likewise, in considering the question of damages, and this duty of the plaintiff to mitigate his damages, you are also to consider the

probable effect of an operation upon his hand or wrist, and probable effect of that operation. You cannot, at this time, consider these conditions as permanent injuries without considering also the effect of a possible operation, and the fact that it is the duty of the plaintiff to mitigate the damages in this respect."

There was testimony to show that the use of the ankle could probably be restored by an operation consisting of transplantation of tendons at an expense of $250 to $500, and requiring hospitalization for several weeks. Both medical experts of plaintiff and defendants agreed upon the advisability of the operation. Plaintiff's medical expert said that the spastic condition of the left ankle causing the toes to drag "will remain more or less constantly permanent." The medical experts of both parties agree that the operation would not restore complete normality. There was no error in refusing defendants' request to charge in regard to the permanency of the injuries, and the judge's charge, as given, gave defendants all that they were entitled to.

It is further claimed that the verdict was excessive; that plaintiff was an insurance salesman and at times earned as high as $40 a day after the injury. His testimony shows his monetary loss during the time he was completely disabled. When we take this into consideration, together with the pain and suffering plaintiff endured, the large medical and hospital bills he was obliged to pay, and the seriousness and the permanency of his injuries, at least in part, even if the ankle can be repaired at some cost, we do not believe that the verdict is excessive.

The judgment is affirmed, with costs.

Clark, C. J., and McDonald, Potter, Sharpe, North, Fead, and Wiest, JJ., concurred.