Donald Pleasant, Plaintiff-Appellee, v. Blue Mound Swim Club, a Corporation, Defendant-Appellant.

**Gen. No. 11,114.**

Fourth District.

August 31, 1970.

Hull, Armstrong & Campbell, of Decatur (Wayne E. Armstrong and Michael I. Campbell, of counsel), for appellant.

Rosenberg, Rosenberg & Bickes, of Decatur (E. Rosenberg, Joseph L. Rosenberg and Wayne L. Bickes, of counsel), for appellee.

JONES, J.

This is an appeal by the defendant from an order of the trial court denying its posttrial motion for judgment notwithstanding the verdict and in the alternative for new trial. The judgment appealed from was rendered in favor of plaintiff upon a jury verdict in the amount of $50,000. The injury upon which the suit was based was incurred when the plaintiff was swimming in a swimming pool owned and operated by defendant and made a dive off of the diving board into the pool, hitting the bottom with his head and arm. No questions are raised on the pleadings or on the instructions.

The pool in question was constructed, owned and operated by the defendant, a not for profit corporation. The use of the swimming pool facilities was limited to members of the club. The pool in question was built in 1962 and is in the shape of a trapezoid. It is fifty feet long, thirty feet wide at the shallow end and twenty feet wide at the deep end. The deep end is a diving well with four sloping sides. The deepest part of the diving well is a flat area eight feet by ten feet in size. The four sides slope upward from this deepest part, the most gradual slope being away from the diving board and toward the shallow end of the pool. The depth of the pool when

measured from the overflow drain is nine feet at the bottom of the diving well, five feet at the center of the pool at the terminus of the gradual slope upward from the diving well and three feet at the shallow end opposite the diving board. The pool is constructed of concrete and is painted white. There is a border of blue tile six inches wide around the pool two inches below the overflow drain. There are two underwater lights, one under the diving board and one on a sidewall. The diving board was fourteen feet long and of wood and fiberglass construction. The diving board was eighteen inches above the concrete deck surrounding the pool and the end of the diving board is two feet above the overflow drain and extends out three and one-half feet from the edge of the pool. There were depth markers on the edge of the deck next to the pool. These were located on each side of the pool in four to five inch letters painted in black on a white background. The letters were "9 Ft." at the center of the diving well, "5 Ft." at the center of the pool and "3 Ft." at the center of the shallow end.

At the time of the accident the plaintiff was twenty-five years of age, six feet two inches in height and weighed 158 to 160 pounds. He had learned to swim and dive at age eleven. He had considerable experience in swimming and diving and considered himself a pretty fair swimmer. He had experience in diving from heights of eight to ten feet and on one occasion had dived from a height of five feet into as little as three feet of water. He testified that a diver could control his dive by the manner in which he dived.

Plaintiff and his family joined the defendant club in the summer of 1964. The date of the accident, September 7, 1964, was the last day the pool was to be open that season. Although plaintiff's wife and children had been to the pool on several occasions that summer this was the first and only time the plaintiff had ever swam at the pool. The plaintiff's wife and children went to the pool

thirty to forty-five minutes before plaintiff joined them after he finished work. Prior to plaintiff's arrival the pool manager had started backflushing the pool filters. This operation utilized water from the pool and caused the water level of the pool to go down. The pool manager testified that at the time he started the backflushing process most of the people at the pool had left. He also testified that he thinks he "over backflushed" and that the operation continued twelve to fifteen minutes when it normally takes about ten minutes. Backflushing for any length of time will lower the water in the pool. The manager stopped because people began to arrive at the pool and the plaintiff arrived after the backflushing operation had stopped. At the time plaintiff arrived at the pool the manager and two lifeguards were on duty but the lifeguards were not near the pool. There were also two boys at the pool, Thomas Ritter and David Holtfretter. The manager of the pool told these boys that the water in the pool had been lowered and warned them to be careful. Neither the manager nor the lifeguards made any statement or gave any warning to plaintiff concerning the water level. The manager of the pool knew plaintiff was present since he watched him "sign in" as required by the club's bylaws.

Plaintiff entered the pool at the shallow end and spent some time talking to his wife and playing with his children. Plaintiff then got out of the pool and walked to the deep end, walked out on the diving board and made a dive. The dive was characterized as "ordinary" with the hands over the head and plaintiff entering the water at approximately a forty-five degree angle. After the dive, the next thing the plaintiff knew was that he had a crushing blow to his head which had hit the upward slope of the pool. The plaintiff floated to the surface, paralyzed, and was pulled from the pool by bystanders.

Plaintiff testified that he didn't know if there was a dark colored tile around the top of the pool near the

overflow, he didn't know where the water level was with relation to the overflow, he didn't know whether the floodlights illuminating the general area were on nor whether the underwater lights were on but at the time of his dive it was getting pretty dark. Prior to his dive he did not notice any depth markers. Plaintiff heard his wife say the water was lower than usual but paid no attention to her remark. He could not see bottom because of small ripples on top of the water and described the lighting condition as not good. He dived into the water without being able to see the bottom. His eyes were closed and he did not open them during the dive. The only thing he relied on as to water depth was his observation from his front yard nearby of other people diving off the board over the two or three summers before the accident. He admitted on cross-examination that prior to his dive he had done nothing to determine the depth of the water.

The evidence as to the depth of the water at the time plaintiff made his dive is in conflict. Thomas Ritter testified that the water was approximately sixteen inches below the overflow drain or about a foot or more below normal. David Holtfretter testified that the water was a foot below normal level which was usually as close as practical to the top of the pool. He said he could tell the water was low before plaintiff dived because the water level was below the blue tile. He dived once after the water was lowered and was not injured. He made a flat dive because he knew the water was low. Plaintiff's wife testified that at the time of the dive she was standing where the dividing rope normally was (it was not in place at the time) and although the water was normally up to her chin it was, on this occasion, at her waist. This distance was demonstrated to the jury by her indicating on her body the two water levels. The record does not indicate this distance in inches or feet. The pool manager testified that in his opinion the water level was ap-

proximately one foot below the overflow drain but he made his observation the night after the night of the accident and did not observe the water level at the time of the occurrence. A witness qualified as an expert swimmer and diver testified on behalf of defendant. He stated that recognized standards of minimum depths of water recommended in diving areas beneath diving boards were for a minimum depth of eight feet under a one meter (39.37 inches) board. He also stated that the higher the board the more water you should have underneath it.

It is defendant's contention that the trial court erred in not granting its posttrial motion for judgment notwithstanding the verdict or in the alternative for new trial. It argues that such judgment should be granted since the evidence when considered in its aspect most favorable to plaintiff so overwhelmingly favors defendant that no other verdict could ever stand and under the rule of Pedrick v. Peoria & Eastern R. R. Co., 37 Ill2d 494, 229 NE2d 504, it is entitled to judgment as a matter of law. The alternative argument for a new trial is that the jury verdict is contrary to the manifest weight of the evidence. It is plaintiff's position that the evidence presented questions of fact for resolution by a jury and their finding for plaintiff is amply supported by the evidence and should not be set aside in this appeal.

The parties are in agreement that there are no Illinois cases involving injuries received by persons diving into a swimming pool. The case of Hendricks v. Peabody Coal Co., 115 Ill App2d 35, 253 NE2d 56, concerned an injury received when a minor dived into a mining excavation and struck a ledge, and the case of Skaggs v. Junis, 27 Ill App2d 251, 169 NE2d 684, concerned an injury received by a minor who dived into an artificial pond and struck a submerged stump and neither case would be controlling here. Both parties rely upon cases from other jurisdictions.

Defendant cites the cases of Day v. Trion Co., 56 Ga App 1, 192 SE 88 (1937), Webb v. Thomas, 133 Colo 458, 296 P2d 1036 (1956), Nelson v. Langstrom, 252 Iowa 965, 108 NW2d 58 (1961), Prusinki v. Holland, 228 F Supp 959, Richardson v. Ritter, 197 NC 108, 147 SE 676 (1929), Caruso v. Aetna Insurance Company (La), 186 So2d 851 (1966) and Chauvin v. Atlas Insurance Company (La), 166 So2d 581 (1964). The Day, Webb, Nelson and Caruso cases concern dives made from the sides of a swimming pool into shallow depths. The Prusinki case concerned a guest at defendant's resort, who, knowing the water depth, jumped off a pier into shallow water. The Richardson case concerned a dive into an artificial lake from the edge of the water some distance away from the diving board erected by the defendant. The plaintiff there had made no effort to determine the depth of the water before making his dive. We deem these cases inapposite on the facts. The case of Chauvin v. Atlas Insurance Company, supra, concerned a dive from a board into a swimming pool while plaintiff was a guest at the home of defendant's insured. At a time when the insured was standing in four or five feet of water approximately fifteen feet from the diving board, the plaintiff dived from the board and landed approximately where the insured was standing striking his head on the bottom of the pool. The trial court's judgment was for the defendant and that judgment was upheld on appeal. In its opinion the Court of Appeal of Louisiana pointed out that there may have been a diving contest in progress, there had been challenges as to who could dive the farthest. The plaintiff, by his own admission, attempted a long dive about fifteen feet from the end of the board to where his host was standing. The court stated:

"Diving under the most favorable conditions is fraught with many dangers, and a diver is required

to make some inquiry or investigation to determine the safety of diving before doing so. The presence of a diving board, which is an invitation to dive, does not relieve one of the duty to make this inquiry when diving for the first time into an unfamiliar pool. The plaintiff had never been in the pool before and his initial entry into the water was in the ill-fated dive. . . . We agree with the trial judge that the plaintiff was negligent in the manner in which he entered the water without first having made more reasonable inquiry, or better still an investigation by first entering the pool in a safer manner. . . . It is our opinion that the plaintiff must bear the responsibility for his own careless and negligent act which caused his injury."

Plaintiff cites Cummings v. Borough of Nazareth, 427 Pa 14, 233 A2d 874 (1967), City of Ferguson v. Marrow, 210 F2d 520 (CA 8th 1954), Indian Springs Swimming Pool Corp. v. Maddox, 70 Ga App 842, 29 SE 2d 724 (1944) and Gray v. Briggs, 259 Mich 440, 243 NW 254 (1932). In the Cummings case a sixteen and one-half year old plaintiff made a dive into defendant's swimming pool from the diving board and was injured when he struck bottom. Below the board the pool depth was 6 feet 87⁄8 inches. The experts in that case testified that the minimum safety depth under a one meter board was nine to ten feet. The board involved was 44.37 inches from the water. No warnings were given to plaintiff as to depth at the time of his dive. A jury verdict for the plaintiff was affirmed on appeal, the court stating:

"Among the duties relating to diving which have been imposed by the courts on the proprietors of bathing resorts or swimming pools are the duties to use care, to provide . . . water of a reasonable safe depth, free from obstructions or to warn the

patrons of the danger in diving . . . of the insufficient depth of, or obstructions in, the water."

In the Ferguson case a judgment for plaintiff was affirmed in a diving board accident from a three meter board. The pool markings indicated eleven feet in the area of the diving pit but the deepest portion of the pit was, in fact, only 10 feet. The pool slanted up as it went away from the board and one part of the pool marked "11 feet" was only 9 feet 6 inches. The lifeguards had been advised that some persons would make long dives of 15 feet or more and that they should warn persons against making such dives since they would be dangerous in the pool in question. Plaintiff was unfamiliar with the pool and received no warnings. The court stated:

"The diving board was an invitation for its use, with an implied representation that its use was not dangerous. It was not used in a manner which the City should not have reasonably anticipated. It was dangerous and the City was charged with knowledge thereof. The jury was warranted in inferring that the City had actual knowledge of the danger. There were no warning signs. Plaintiff was given no warning. He could not see the bottom of the pool and did not know and could not tell how deep the water was. The danger was therefore not so obvious to him as to eliminate the failure to warn as a proximate cause of his injury or to make him guilty of contributory negligence."

In the Indian Springs case plaintiff's decedent came directly from the dressing room at defendant's pool, walked to the diving board, and made a dive from the spring board, landing in 3 to 3½ feet of water. The evidence of warning of low water was conflicting. The court held that the question of negligence and due care was a

285

question of fact for the jury. In the Gray case the plaintiff made a dive from a diving board which defendant had erected at the end of a pier. There was no sign or warning concerning the water depth but the evidence was that plaintiff saw others diving from the board and assumed the water was sufficiently deep to permit safe diving. The water was 5½ feet deep in front of the board and plaintiff was injured when he hit bottom from a "jack-knife" dive. The court held:

> "Defendants contend that it was contributory negligence as a matter of law for plaintiff to dive in the manner indicated without knowing or making any effort to ascertain the depth of the water. The trial judge reviewed the testimony and properly instructed the jury that unless they found that plaintiff had been warned by numerous signs and by the life guard, as asserted by defendants and denied by plaintiff, the latter had a right to assume that it was safe for him to use the diving board in the usual and customary manner."

The pool in question was not a farm pond, a mining excavation, a borrow pit or other random body of water improvised for swimming and diving. To the contrary, it was a constructed swimming pool equipped with a diving board, a place expressly provided for swimming and diving activities. In such a circumstance we believe the better rule to be that the presence of a diving board is an invitation to use it and an implied representation that it may be used in an ordinary manner with safety. It is reasonable to assume that the water beneath a diving board is sufficiently deep to permit use of the board and avoid injury by striking the bottom of the pool. Corollary is the duty of the owner of a swimming pool equipped with a diving board to provide water beneath it of sufficient depth to dive

with safety and to warn persons using the board of any dangerous conditions or instrumentalities. We do not mean to say that the liability for injuries received in diving from a provided board is absolute. The ordinary rules of negligence apply and evidence may justify a finding that a party so engaged is guilty of contributory negligence and thus barred from a recovery.

■ ■ From the evidence presented to it the jury could have found that the water level had been lowered to the extent that it constituted a dangerous condition, that the defendant, through its manager, knew of the dangerous condition and in fact had brought it about by the backflushing process, that the presence of plaintiff was known and the pool manager and lifeguards failed to warn him of the dangerous condition despite the fact that they had warned others present, and that in so failing they were guilty of negligence which was the proximate cause of plaintiff's injury. The plaintiff was not guilty of contributory negligence as a matter of law in failing to test the depth of the water underneath the board before making his dive. Upon the basis of the evidence presented the jury could find plaintiff was free from contributory negligence as a matter of fact, though such finding is contrary to defendant's argument. Defendant states that the plaintiff had positive notice of the lowered level of the water in the pool by the presence of the depth markers around the pool, by the blue tile near the overflow drain which indicated the water depth, and in that the bottom of the pool could be clearly seen because of the lighting and the clarity of the water. However, these indicia were not absolute in their purpose. This was plaintiff's first visit to the pool and from his front yard he had seen others making dives from the board just as he did. Plaintiff was warranted in believing that the pool depth was that as indicated by the markers. The blue tile could well be trim or decoration.

Plaintiff testified that he could not see the bottom clearly because of the ripples on the water and that the lighting was not good. In sum, the disputed facts of the case present a preeminent situation for resolution by a jury. Their finding is not against the manifest weight of the evidence and we will not set it aside.

The trial court was correct in refusing to grant defendant's motions for judgment notwithstanding the verdict and for new trial and its judgment will be affirmed.

Affirmed.

CRAVEN, P. J. and TRAPP, J., concur.