RICHARD LEONARD, A Minor, by Karen Leonard, his Mother and Next Friend, Plaintiff-Appellant, *v.* PITSTICK DAIRY LAKE AND PARK, INC., Defendant-Appellee.

Third District    No. 3—82—0722

━━━━━━

Opinion filed May 11, 1984.—Rehearing denied June 28, 1984.

Stephen J. Heine, Peter F. Ferracuti, and Karen L. Kendall, all of Peter F. Ferracuti & Associates, of Ottawa, for appellant.

T. Donald Henson and Walter J. Zukowski, both of Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of La Salle, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff Richard Leonard was rendered a quadriplegic as a result of a spinal cord injury incurred when he performed a running dive in the shallow water at defendant's commercial lake in La Salle County, Illinois. Plaintiff filed a suit for personal injuries against Pitstick Dairy Lake and Park, Inc., the corporate owner-operator of the beach, and after a lengthy jury trial, the jury returned a verdict for defendant. Plaintiff appeals.

The swimming lake was deepest in the center where two diving rafts were located and where the water was 11 feet deep. About 57

feet from the edge of the water, a steel cable marked the limit of the shallow water, dividing the diving area from the wading and swimming area. From the water's edge at the beach, the water sloped downward at a fairly even rate of decline to the cable where the water was about four feet deep. Lifeguards were located on elevated chairs on all sides of the lake, and all were equipped with a telephone system to communicate between guard stations. A loudspeaker system was also in operation which could be heard throughout the swimming area.

On June 14, 1979, plaintiff was 15 years old and had just completed his first year of high school. He was 5 feet 10 inches tall and had grown nearly 2½ inches since the previous summer. He had been swimming at Pitstick Lake six or seven times the previous summer and several times during earlier seasons, but had not been swimming yet during the summer of 1979. He arrived at the beach shortly after noon with several high school friends. One of the boys did not feel well, so plaintiff stayed with him at the bath house while the other boys went down the beach and entered the water. A short time later plaintiff went down the beach alone, stopped at the water's edge to test the temperature of the water with his foot, and then began a loping trot in the water. About one-half way to the cable, when the water was just above his knees, plaintiff put his hands out above his head and performed a horizontal dive into the water, which at that point was about 2½ feet deep. His hands hit the bottom of the lake followed by his head with sufficient force to jam his chin into his chest. He heard a pop and felt a sharp pain in his neck and a strong tingling sensation through the rest of his body. He was then aware that he was floating face down in the water, but he was not able to move. He held his breath until he was rescued by a lifeguard who had seen him floating face down in the water with his head twitching. The life guard realized that something was wrong.

Plaintiff was hospitalized for seven months with a crushed fourth cervical vertebra and a displacement of the third cervical vertebra. He has some feeling but almost no movement from the neck down except for some ability to move with his arms. He has some minimal ability to feed himself and to write, but he is totally dependent on others for bathing, dressing, transportation, meal preparation, and general care. He suffers from severe muscle spasms which require him to be strapped into a wheel chair to avoid being thrown out. He can expect no significant improvement for the remainder of his life. He now lives at home where his parents care for him under the supervision of a physical therapist. He has been able to complete high school and to

receive a diploma at the same time as the rest of his classmates.

Plaintiff filed suit against defendant corporation, and the cause was tried before a jury upon the theory that defendant was negligent in permitting young persons, including plaintiff, to perform surface dives in shallow water and in failing to post signs warning of the danger. On appeal from the verdict in favor of defendant, plaintiff asserts as error numerous rulings on the admission of evidence and on jury instructions and also asserts that the verdict was contrary to the manifest weight of the evidence.

As is to be expected in a hotly contested trial of four weeks' duration, some errors occurred and certain statements were made which the jury should not have heard. Most of the errors were not of a gravity to be considered reversible error, but two of the erroneous rulings were of sufficient magnitude to affect the outcome of the trial and, therefore, denied plaintiff the fair trial to which he was entitled under laws of the State of Illinois.

Of critical importance was the ruling of the trial court refusing to permit plaintiff's expert witness to express an opinion as to whether it was an unsafe practice to permit surface dives in the shallow water at defendant's beach. According to James Farson, defendant's manager of the bathing beach, no effort was ever made to prevent shallow water diving. The manager testified that he saw many young people perform such dives, and he had dived shallow himself when swimming. By his testimony, the manager left no doubt that such diving was observed, permitted and condoned by defendant in the operation of the beach. The "Beach Safety Rules" posted on the bath house prohibited running or throwing sand, wrestling and pushing on the raft and tower, ball playing on the beach, inflated toys outside the "rope," and playing on the "ropes." However, the "Safety Rules" made no reference to diving.

The manager's testimony that shallow diving was permitted was corroborated by two patrons of the beach, Craig Totel and John Fuller, who testified that they had made many such shallow water, running dives at Pitstick Lake and had never been warned of the possible danger. Two lifeguards employed by defendant, Sue Bohannon and Keith LeBeau, also testified that they had made many running dives in shallow water themselves and that they had observed many bathers making such dives at Pitstick Lake before June 14, 1979, and they were never told to stop such diving practice.

Finally, Edwin Pitstick, owner of the bathing beach lake, testified that he never knew of anyone getting hurt doing a shallow dive, that he did not perceive any danger to youngsters doing shallow dives be-

fore this accident, that it never crossed his mind that a dive in shallow water would likely cause injury, and that he permitted running dives in shallow water. At trial, it was defendant's position that the corporation had no knowledge of any danger from permitting shallow dives and, therefore, was not negligent in permitting such dives and in failing to warn.

Plaintiff called as a witness Dr. George E. Lawniczak who had done studies, research, and writing in the field of biomechanics, particularly diving mechanics. He testified that he has studied the trajectory and speed of the human body at various points during a dive, the angles associated with a dive, the forces that may result from contact with a barrier, and the general subject of motion during a dive. In addition to other areas of study and research, Dr. Lawniczak has been retained by a swimming pool company to advise as to safety and warning signs. The witness had visited defendant's lake prior to trial and had walked the bottom of the lake, examined signs, and viewed the layout and composition of the lake bottom.

Dr. Lawniczak testified that there are 800 spinal cord injuries as a result of diving in the United States each year, that 94% of those injuries result in quadriplegia, that such injuries cause quadriplegia because only a minimal amount of force is required to break the neck and thereby damage the spinal cord, that 50% of all quadriplegias occur in the 15 to 25 year age group, and that 82% are male. Such injuries do not occur with younger children because they are shorter, weigh less, and lack the strength to generate sufficient force to cause a neck fracture. The most common type of injury is that experienced by plaintiff, where the head strikes the bottom in such a way that the chin is forced into the chest and the extreme flexion of the neck causes fractures and dislocation of the cervical vertebrae. The witness stated that 300 pounds of force will result in a spinal cord injury, and in an incident of the type which occurred here about 1,800 pounds of force would be generated by plaintiff's contact with the bottom of the lake.

The expert witness further testified that a person five feet tall will slow down to half the diving speed in approximately five feet of travel through water, while a person six feet in body length will require eight feet to slow down to one-half the speed at water entry. This is because the center of mass of the longer body is out of the water longer, and as a consequence, the speed of the head can actually increase during the first two feet after entry into the water. Also, the taller person is more likely to rotate his body downward upon entry into the water.

After the witness testified to all the studies relied upon and the scientific data derived from his own research, plaintiff attempted to ask the witness whether in his opinion it was an unsafe practice for defendant to permit youngsters such as plaintiff to make a running head-first entry into the wading area. The trial court sustained defendant's objection on the ground that this question does not require expertise and that it is an issue for the jury to decide. The court made identical rulings as to additional questions posed by plaintiff, including what in the doctor's opinion was a safe minimum diving depth at Pitstick Lake, what steps should have been taken by defendant for the safety of untrained divers, and what means could have been used to accomplish a prohibition of diving in the wading area.

According to plaintiff's offer of proof, plaintiff's expert would have testified that it was unsafe to permit plaintiff to dive in shallow water, that the degree of force required for a young person to break his neck is so minimal that it is not understood, that 95% of all diving injuries occur in shallow water, that the safe minimum diving depth at defendant's lake was eight feet, that the accident could have been prevented if the lifeguards had been instructed to prohibit diving in shallow water and if warning signs had been posted. However, plaintiff was permitted to introduce into evidence, without objection, signs that would have been effective to warn of the danger of shallow diving.

Plaintiff contends that it was error to refuse to allow his expert witness to testify as to his opinion in the above instances, and that these rulings prevented him from placing before the jury the standard of care which he claims defendant violated. It was the plaintiff's position that spinal cord injuries leading to quadriplegia occur as a result of shallow diving with sufficient frequency that defendant should have known the danger and should have taken steps to prevent young persons from making such dives.

Expert witnesses may state an opinion as to the ultimate issue of a case without usurping the province of the jury since the trier of fact is not required to accept the opinion of the expert. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 273 N.E.2d 809; *Tripp v. Bureau Service Co.* (1978), 62 Ill. App. 3d 998, 370 N.E.2d 324.) The limitation on the admissibility of opinion evidence as to the ultimate issue has been defined by the Illinois Supreme Court in *Miller v. Pillsbury Co.* (1965), 33 Ill. 2d 514, 516, 211 N.E.2d 733, 734, as follows:

> "While there has been a reluctance to permit expert testimony on many matters on the basis that it invades the province

of the jury, confuses the issues and usurps the function of the jury, the trend is to permit expert testimony in matters which are complicated and outside the knowledge or understanding of the average person, and even as to matters of common knowledge and understanding where difficult of comprehension and explanation. The jury still may accept or reject such testimony." See also *Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, 98-99, 382 N.E.2d 1201, 1205.

In the case at bar, the danger of diving head first into shallow water may seem at first glance to be a matter of common knowledge and understanding for which expert opinion is not needed. However, closer examination of the evidence indicates that the nature and extent of the danger of surface or horizontal diving by teenagers in all probability is not commonly understood, even by many adults of considerable experience. Neither the manager nor the owner of the beach operation realized the potential danger, particularly for young men of plaintiff's size and age. The jury was denied the assistance of the opinion(s) of expert(s) which would have clarified the principles of speed, motion, force, and trajectory involved when a diver enters the water and comes in contact with an immovable barrier.

Of particular importance in this case is the question of what would be a safe depth of water to permit diving. In *Pleasant v. Blue Mound Swim Club* (1970), 128 Ill. App. 2d 277, 263 N.E.2d 107, plaintiff was severely injured following a dive from a diving board into a swimming pool. The water level had been lowered to a dangerous extent and an expert witness testified as to recognized standards of minimum depths of water recommended in diving areas under diving boards. The propriety of such testimony apparently was not challenged in *Pleasant v. Blue Mound Swim Club* (1970), 128 Ill. App. 2d 277, 263 N.E.2d 107, and similar testimony was discussed approvingly in the decision in *Cummings v. Nazareth Borough* (1967), 427 Pa. 14, 233 A.2d 874. In *Cummings*, the court stated:

"Among the duties relating to diving which have been imposed by the courts on the proprietors of bathing resorts or swimming pools are the duties to use care to provide *** water of a reasonable safe depth, free from obstructions, or to warn the patrons of the danger *** of the insufficient depth of, or obstructions in, the water." (427 Pa. 14, 17, 233 A.2d 874, 877. See also *Pleasant v. Blue Mound Swim Club* (1970), 128 Ill. App. 2d 277, 284, 263 N.E.2d 107, 111-12; Annot., 48 A.L.R.2d 104, 129 (1956).)

Whether the particular type of diving known as surface or horizontal

is dangerous when performed in a portion of the defendant's lake intended for wading and swimming is, we believe, a matter where expert opinion is helpful and should be permitted. See *McClure v. Suter* (1978), 63 Ill. App. 3d 378, 379 N.E.2d 1376; *Sherman v. City of Springfield* (1966), 77 Ill. App. 2d 195, 222 N.E.2d 62.

One important factor in this case is the age of plaintiff at the time of the accident—15 years of age. Illinois courts have said:

> " 'The known characteristics of children should be taken into consideration in determining whether or not sufficient care for the safety of a child has been exercised in a particular case. Accordingly the fact that children cannot and do not ordinarily exercise the same degree of prudence and care for their own safety as adults imposes on those by whose acts or omissions a child may be injured the obligation of exercising more vigilance and caution than might be sufficient with respect to an adult and conduct which might reach the standard of ordinary care with respect to an adult might in the case of a child, amount to negligence or even gross negligence.' 65 CJS Negligence sec. 12 \*\*\*." *Miller v. Veterans of Foreign Wars of the United States* (1965), 56 Ill. App. 2d 343, 347, 206 N.E.2d 316, 319.

It was precisely the unique characteristics of teenage boys, newly grown taller and heavier and stronger, that in Dr. Lawniczak's opinion made surface diving an unsafe practice in the shallow area of defendant's beach. This opinion is similar to an expert opinion that was challenged in *Stanley v. Board of Education* (1973), 9 Ill. App. 3d 963, 293 N.E.2d 417, where the plaintiff was struck on the head by a baseball bat while on a school playground. An expert in playground supervision and game safety was allowed to testify that 30 feet was not a safe distance between an older batter playing fastpitch baseball and a younger group of children playing ball. The reviewing court undertook a thorough review of the rule relating to expert opinions and concluded that expert testimony should be allowed if it would aid the triers of fact in their understanding of the issues even though they might have a general knowledge of the subject matter. As the court in *Stanley* noted, the more modern view is expressed in Rule 702 of the Federal Rules of Evidence which provides:

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert \*\*\* may testify thereto in the form of an opinion or otherwise."

Although Rule 702 has not been adopted by the Illinois Supreme Court as yet, we believe the rule incorporates the better view as

enunciated in *Stanley*.

■ The trial court in the case before us quite plainly disallowed expert opinion evidence which would have aided the jury in understanding the issues. The court did not recognize the special characteristics of teenagers, and did not take into account the scientific knowledge related to the issue of diving safety. We hold that ruling to be erroneous.

■ Defendant also claims that the trial court's ruling should be sustained because Dr. Lawniczak was not qualified as an expert concerning beach operations and that his studies involved swimming pool diving only. The trial court ruled that Dr. Lawniczak was qualified to testify as to diving and diving safety, and we find that the record supports that ruling. Any distinction that can be drawn between surface diving in lakes and in swimming pools would go to the weight to be given his testimony and not its admissibility.

The prejudice to plaintiff resulting from the erroneous exclusion of Dr. Lawniczak's opinion testimony was made much more severe by an error occurring in the course of closing argument. Dr. Lawniczak had referred to certain research data appearing in a text book by Dr. Richard Stone, but no attempt was made to admit the book into evidence. During closing argument, defense counsel read portions of the book to the jury. When plaintiff objected that this material had not previously been referred to during testimony, the trial court stated, "The jury heard what was read to the jury and they will disregard it if it was not so read."

■ Defendant took advantage of the court's ruling to paraphrase several additional statements from Dr. Stone's book, including highly prejudicial statements of opinion going to the ultimate issues of the case. According to counsel, Dr. Stone recommended that depth markings and warning signs not be used because they give "a false sense of security," and he further recommended "that general prohibitions against diving into shallow water in pools not be adopted." On appeal defendant admits that the portions objected to have not previously been read to the jury. In closing arguments, counsel may not supply new or additional facts or read from scientific works not in the record. (See *Flynn v. Cusentino* (1978), 59 Ill. App. 3d 262, 375 N.E.2d 433; R. Hunter, Trial Handbook for Illinois Lawyers secs. 80.16, 80.22 (5th ed. 1983).) Here expert opinion not previously in evidence was vigorously urged upon the jury by defense counsel as conflicting with the opinion of Dr. Lawniczak that was excluded from the jury's consideration. The court responded with an equivocal ruling. Coming at the end of a long trial, we believe counsel's improper argument cou-

pled with the erroneous exclusion of expert testimony constituted prejudicial error. Hence a new trial is required.

Another matter also deserves comment. To establish the value of the care that plaintiff requires, a manager from a home health care service organization testified to the cost of the services that plaintiff will need. On cross-examination, defendant's counsel inquired, "Do you offer this type of program *** to people under federal subsidies?" This was an impermissible reference to a collateral source. (*Phelan v. Santelli* (1975), 30 Ill. App. 3d 657, 334 N.E.2d 391.) Although we are not prepared to say that this impermissible question amounted to reversible error under the circumstances, since plaintiff's objection was sustained and the jury was instructed to disregard the answer, questions relating to collateral sources should not recur upon retrial.

■ Finally plaintiff has argued before this court that it was error to refuse to permit two other beach operators to testify to the signs which they have posted at their beaches prohibiting diving in shallow water. Evidence of custom and practice in the trade of beach operations would be relevant in determining the standard of care which defendant should meet, but that evidence is properly the subject of expert testimony. (*McClure v. Suter* (1978), 63 Ill. App. 3d 378, 379 N.E.2d 1276.) Here plaintiff made no attempt to qualify the two beach operators as having knowledge of signs at any lakes other than their own; hence their testimony was properly excluded.

Plaintiff has asserted numerous other errors which we have examined and find were not meritorious. Furthermore we need not discuss these issues since the cause is being reversed and remanded for a new trial at which the same points are not likely to arise.

For the reasons stated, we reverse the judgment for defendant, and we remand this cause for a new trial.

Reversed and remanded.

STOUDER, P.J., and SCOTT, J., concur.