RICHARD LEONARD, Plaintiff-Appellant, v. PITSTICK DAIRY LAKE AND PARK, INC., Defendant-Appellee.

Third District  No. 3—88—0780

Opinion filed September 13, 1990.

STOUDER, J., specially concurring.

Peter F. Ferracuti, of Law Offices of Peter F. Ferracuti, P.C., of Ottawa (Mark A. Schindler, of counsel), for appellant.

Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of La Salle (T. Donald Henson, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:
Richard Leonard filed suit against Pitstick Dairy Lake & Park, Inc., the owner of the commercial swimming beach in La Salle County where Leonard incurred a spinal cord injury rendering him a quadriplegic. The complaint alleged that defendant was negligent in permit-

ting plaintiff, a 15-year-old untrained diver, to dive in the shallow or wading area of the lake and in failing to warn plaintiff of the danger of diving in shallow water. The case proceeded to trial before a jury, and a verdict was returned in favor of defendant. On appeal, this court reversed and remanded the cause for a new trial. (*Leonard v. Pitstick Dairy Lake & Park, Inc.* (1984), 124 Ill. App. 3d 580, 464 N.E.2d 644.) At the conclusion of the retrial, a verdict was again returned in favor of defendant. Plaintiff appeals from the judgment entered on that verdict.

According to the evidence presented during the trial involved in this appeal, plaintiff was 15 years old on June 14, 1979, when he and a group of friends went to Pitstick Lake for the first time that summer. Intending to swim out to the raft in the deep water, plaintiff went down the beach to the water's edge where he tested the water with his feet and discovered that it was cold. He then trotted into the water about one-half the distance to the cable which separated the shallow water from the deep water. He put his hands out in front of his body and dived forward into the water. First his fingers and then his head hit the bottom, forcing his chin into his chest and causing a pain in his neck. He then realized that he was facedown in the water, and he was unable to move.

He was pulled from the water and taken immediately to a hospital. After extensive treatment and therapy, plaintiff now lives at home. He cannot care for himself. With the assistance of his parents, he was able to complete high school and two years of computer science at Illinois Valley Community College, but he has not found employment.

Pitstick Lake is an artificial body of water approximately 300 feet by 200 feet with beach areas on both the north and south sides. The bottom of the lake slopes gradually from the beaches to a depth of about 11 feet in the center. At a depth of about four feet, a cable separates the swimming and diving area from the wading areas. At the time of the accident, two floats and a tower diving board were located in the central portion. The depth was about 8½ feet in the vicinity of the floats.

There were no signs warning of the danger of diving in shallow water, and the lifeguards at the beach were never instructed to prohibit shallow water diving. One of the lifeguards on duty the day of plaintiff's injury testified that the lifeguards themselves had performed "run and plunge" dives in the wading area while engaged in recreational swimming. She also testified to one instance when she had struck her head on the bottom, twisting her neck and causing her

to somersault in the water, after which she never again performed a running dive in shallow water.

Plaintiff introduced expert evidence setting forth the danger of spinal cord injuries caused by diving in shallow water. The lifeguards employed at defendant's beach had received instruction based upon the contents of the American Red Cross lifesaving manual, which advises that the run-and-plunge dive in shallow water should only be performed by trained lifeguards as a lifesaving technique. Plaintiff also introduced regulations of the Illinois Department of Public Health and Safety which require shallow wading areas to be separated from the swimming and diving areas by lines securely anchored and buoyed.

Plaintiff's expert witness testified that, in her opinion, diving in shallow water is unsafe. She explained that a young swimmer of plaintiff's age, untrained in diving, may tuck his head down as he enters the water in a shallow dive. Since his body will follow his head, the shallow dive becomes a "vertical plunge," and the head may strike the bottom with considerable force. She also stated that defendant should have prohibited diving in the shallow or wading area, that signs to that effect should have been posted to warn of the danger, and that lifeguards should have been specially trained to enforce the prohibition. Plaintiff's treating physician also testified that, in his opinion based upon the hundreds of diving injuries he had treated, a horizontal type dive in shallow water was an unsafe practice.

Defendant presented evidence that Ed Pitstick, owner of defendant corporation, and James Farson, lake manager for defendant, had never prohibited diving in shallow water. Farson stated that he had read that such diving was a common cause of spinal cord injuries, but Pitstick testified that he was not aware of the danger from shallow water diving.

The only other defense witness was Joe Haywood, the current manager of Pitstick Lake. He had been employed as a lifeguard at the beach from 1974-76 and was beach manager in 1977. In 1979 he was a lifeguard instructor in Ottawa who trained some of the lifeguards on duty the day of plaintiff's accident. Haywood testified for defendant that he had never prohibited a run-and-plunge dive, that the owner (Ed Pitstick) made the rules at the beach, and that shallow water dives were never barred at Pitstick Lake. On cross-examination, Haywood stated that he knew such dives were not recreational dives and were only to be performed by persons trained in lifesaving techniques. He had trained lifeguards to keep their heads up when making such dives.

Of critical importance to the disposition of this appeal is the trial court's refusal to give plaintiff's instructions on comparative fault. Plaintiffs' instruction No. 15 is as follows:

"It was the duty of the Plaintiff, before and at the time of the occurrence, to use ordinary care for his own safety. The failure of a person to use ordinary care for his own safety is known as contributory negligence.

Plaintiff's contributory negligence, if any, does not bar his recovery. However, the total amount of damages to which he would otherwise be entitled is reduced in proportion to the · amount of his negligence. This is known as comparative negligence."

Plaintiff also tendered instruction No. 17:

"A minor is not held to the same standard of conduct as an adult. When I use the words 'ordinary care' with respect to the Plaintiff, I mean that degree of care which a reasonably careful child of the age, mental capacity and experience of the Plaintiff would use under circumstances similar to those shown by the evidence. The law does not say how such a child would act under those circumstances. That is for you to decide."

When plaintiff offered these two instructions along with several others pertaining to comparative negligence, defendant objected on the ground that the issue of comparative fault was not an issue in the case.

The state of the pleadings at the time of this trial is not clear from the common law record before us. Before the first trial of this cause, defendant had pleaded the contributory negligence of plaintiff as its first of three affirmative defenses, in the following words:

"That before and at the time of the occurrence alleged in plaintiff's complaint, the plaintiff was negligent in one or more of the following respects:

(a) He negligently and carelessly dived into a portion of the lake which he knew or should have known was shallow water and which would likely cause injury.

(b) He improperly dived into the shallow water of the lake, with a trajectory which brought his head and neck into contact with the lake bed.

That the negligence of the plaintiff caused or contributed to cause the injuries complained of and consequently his negligence should be compared to that of the defendant."

Prior to the first trial, the trial judge then presiding granted a motion by plaintiff to strike defendant's other affirmative defenses.

The record before us is unclear as to whether the court intended to strike the first affirmative defense as well as the other two. There were no changes in the pleadings prior to the trial which is the basis of this appeal.

At the conference on instructions during the instant trial, the trial court stated that it believed there was no affirmative defense of comparative negligence pleaded, and if there was, defendant had the right to withdraw it. The trial court then ruled that the comparative negligence instructions offered by plaintiff would not be given. On appeal, plaintiff argues that the trial judge's ruling was based upon the mistaken belief that the affirmative defense of plaintiff's negligence had been stricken much earlier by a different judge. In its brief filed in this court, defendant has stated that the affirmative defense of plaintiff's negligence was not withdrawn until the conference on instructions. Thus, defendant agrees with plaintiff's assertion, but also points out that the trial court ruled that defendant was entitled to withdraw the issue of plaintiff's negligence from the case if it so desired.

Plaintiff seeks a new trial on the ground that defendant argued that the injury was caused solely by plaintiff, that defendant introduced evidence tending to establish plaintiff's fault, that defendant should not have been allowed to withdraw an affirmative defense at the close of all the evidence, and that it was error to refuse to give comparative negligence instructions under these circumstances.

■ Section 2—613(d) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—613(d)) provides:

> "The facts constituting any affirmative defense, such as payment, release, satisfaction, discharge, license, fraud, duress, estoppel, laches, statute of frauds, illegality, *that the negligence of a complaining party contributed in whole or in part to the injury of which he complains,* \*\*\* and any defense which by other affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the complaint, \*\*\* in whole or in part, and any ground or defense, whether affirmative or not, which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise, must be plainly set forth in the answer or reply." (Emphasis added.)

The italicized portion of the above statute was added in 1985, long before the 1988 trial involved in this appeal. Because of that provision, it was necessary that defendant plead plaintiff's negligence as a defense even though contributory negligence is no longer an absolute bar to recovery but rather goes only to the diminution of damages.

(*La Salle National Bank v. City of Chicago* (1985), 132 Ill. App. 3d 607, 478 N.E.2d 417; *Lee v. Louisville & Nashville R.R. Co.* (1953), 349 Ill. App. 276, 110 N.E.2d 691.) In the absence of the required pleading, defendant's attorney should not have argued to the jury, as he did, that plaintiff's injury was *solely* the result of plaintiff's own conduct. Given the arguments and evidence already before the jury, it was error to allow defendant to withdraw the defense of plaintiff's negligence at the instruction conference.

█ Furthermore, the law of Illinois also provides that a "litigant is entitled to have the jury instructed on the issues presented, the legal principles to be applied, and the facts that must be proved to support a verdict." (*Gaskin v. Goldwasser* (1988), 166 Ill. App. 3d 996, 1009, 520 N.E.2d 1085.) In *Gaskin v. Goldwasser*, a dental malpractice case, the trial court dismissed defendants' affirmative defense of contributory negligence at the close of all the evidence but refused to give an instruction concerning the evidence the jury had heard relating to plaintiff's poor oral hygiene and general neglect of his teeth. The reviewing court ruled that defendants failed to prove plaintiff's negligence was the proximate cause of his injury, but that the evidence of plaintiff's dental condition before and after surgery could be considered in determining the amount of damages. Since the evidence of plaintiff's negligence was for a limited purpose and might mislead the jury, it was ruled that the jury should have been instructed as to the purpose of that evidence.

A similar result was reached in *Lee v. Louisville & Nashville R.R. Co.* (1953), 349 Ill. App. 276, 110 N.E.2d 691, a case involving comparative negligence under the Federal Employers' Liability Act (FELA) (45 U.S.C.A. §51 *et seq.* (West 1988)). There, as in the case at bar, defendant denied any negligence and alleged that plaintiff's injuries were the proximate result of plaintiff's sole negligence. The trial court's refusal to give defendant's instruction on the effect of contributory negligence in minimizing damages was ruled erroneous since plaintiff's own testimony was sufficient to support an inference of some contributory negligence. Since it was important that the jury be properly instructed, failure to do so was held to be reversible error.

In the case before us, the determinative question is whether there was sufficient evidence and argument by counsel to confuse the jury as to the legal implication of any negligence on the part of plaintiff. During opening argument, plaintiff's counsel stated that the evidence would show that a shallow water dive is unsafe and should not have been permitted by defendant corporation. Defendant's counsel then

argued that the accident was not caused by any negligence of defendant but was the result of plaintiff engaging in a dive "when he should not have done so." Defendant's counsel later concluded opening argument by saying, "The cause of this accident was Rick Leonard who, knowing the depth of the water at the moment he left his feet, dived into the water and struck his head on the bottom."

During the trial of this case, defendant pursued the latter point by eliciting from plaintiff during cross-examination a statement that plaintiff knew how deep the water was when "he left his feet."

In closing argument, plaintiff's counsel attempted to explain this evidence by stating:

"Now, counsel's going to argue first of all, he's going to try to contend that permitting this dive is not negligence. That this was a safe dive. And then I think he's going to argue that in any event, that was not the proximate cause of the young man's injury. *** Would you say that Rick Leonard was negligent cause he hit his head on the bottom because he did not make a perfect dive? He made an imperfect dive.

You know, it kind of reminds me of a Sunday golfer or an infrequent golfer. And one of the commonest problems when you hit a golf ball with a driver is you result in a slice. Now, I'm sure none of you would say as to that golfer, when you hit that slice you were negligent. You didn't use reasonable care. I know people that address a ball, study it, may even read books before they even try to hit a golf ball and practice but they end up hitting slices. That's not negligence. That's not a failure to use reasonable care. It's just a lack of skill.

Rick Leonard had a lack of skill. They knew it and they permitted this dive."

This argument was an attempt by plaintiff's counsel to dispel the impression that Rick Leonard's negligence was the proximate cause of his injury, an impression implicit in defense counsel's opening argument and in his emphasis on plaintiff's knowledge of the depth of the water at the time of his dive. During closing argument, defense counsel discussed a safety manual which had been admitted into evidence, saying:

"[I]t talks about safety practices, Personal Water Safety, which applies to *** the swimmer or the diver. You know what it says there? It says dive only into known waters of sufficient depth. At any given time, Rick Leonard knew the depth of that water. That was known water to Rick Leonard."

■ The jury could only be confused as to the legal effect of the

evidence and arguments relating to plaintiff's fault in diving too deeply into water, the depth of which he knew. The trial court erred when it refused to instruct the jury that under the law of Illinois, evidence of plaintiff's negligence does not bar liability but only goes to the reduction of damages.

■■ Defendant insists that the failure of the trial court to instruct the jury concerning the evidence of plaintiff's negligence could not affect the outcome of the case because the jury, answering a special interrogatory, expressly found that defendant was not guilty of negligence which proximately caused plaintiff's injuries. However, we have ruled above that the jury could not have properly determined the legal effect of the evidence before it because of the confusion resulting from the inadequacy of the instructions given. The special interrogatory must, of course, be considered together with the other instructions to the jury by the court. (*Mudd v. Goldblatt Brothers, Inc.* (1983), 118 Ill. App. 3d 431, 454 N.E.2d 754.) The omission of comparative negligence instructions was not "cured" when the jury answered the special interrogatory in defendant's favor.

■■ Although not argued on appeal, we believe another substantial and prejudicial error occurred in the instruction of the jury when plaintiff was compelled to withdraw his instruction No. 17 (quoted above) following the court's refusal to instruct as to comparative negligence. The trial court said it would give instruction No. 17, which set forth the diminished standard of conduct required of a minor in the exercise of "ordinary care." However, plaintiff withdrew the instruction because instruction No. 17 without the comparative negligence instructions would suggest the possibility of plaintiff's negligence but would not guide the jury as to the limited consequence of such negligence. Plaintiff was between the proverbial "rock and a hard place." As a result, the jury was uninstructed as to the reduced degree of care to be used in judging the conduct of minors.

■■ Ordinarily, a reviewing court will not comment upon errors which were not raised in the trial court or preserved for appeal, but where the interests of an injured minor are involved, circuit courts and courts of review have a special duty to take notice of any substantial irregularity whenever it first becomes apparent in the proceeding. *In re Marriage of Adams* (1990), 133 Ill. 2d 437; *Blakely v. Johnson* (1976), 37 Ill. App. 3d 112, 345 N.E.2d 814; *Phelan v. Santelli* (1975), 30 Ill. App. 3d 657, 334 N.E.2d 391.

■■ Also concerning plaintiff's minor status, we made very clear in the first *Leonard v. Pitstick* decision that the law of Illinois requires adults to use extra care and additional vigilance where the

safety of minors is involved as compared to the care required for the safety of adults. In *Miller v. Veterans of Foreign Wars* (1965), 56 Ill. App. 2d 343, 206 N.E.2d 316, a 14-year-old child was injured when he jumped from a stage and landed astraddle an open door leading to storage space beneath the stage. The court recognized an obligation imposed on adults to exercise more vigilance and caution for the safety of a minor than would be sufficient with respect to an adult, and stated:

> " '[C]onduct which might reach the standard of ordinary care with respect to an adult might in the case of a child amount to negligence or even gross negligence.' [Citation.] *** '(T)he law recognizes the lack of judgment, caution and discretion which exists in children and requires adults to take notice of these tendencies and conduct their business with that in view so as reasonably to guard against injury to them.' " 56 Ill. App. 2d at 347-48, 206 N.E.2d at 319, quoting 28 Ill. L. & Prac. *Negligence* §28 (1957).

■ In cases involving trespassers, Illinois courts have recognized a duty on the part of owners or occupiers of land to protect children from injury where they would not appreciate the risk. We summarized the applicable law in *Ford v. Wilson* (1989), 184 Ill. App. 3d 374, 376-77, 540 N.E.2d 1, a case involving a 13-year-old plaintiff injured while entering shopping mall property from a bicycle path where the approach was obscured by weeds and shrubs. There we said:

> "Generally, the owners or occupiers of land are under no duty to keep their premises in any particular state or condition to promote the safety of persons who come upon the premises without express or implied invitation. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836; *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177.) An exception exists, however, where: (1) the owner or person in possession knows or should know that young children habitually frequent the premises; (2) a dangerous condition is present on the land; (3) the dangerous condition is one that is likely to cause injury to the children because they, by reason of their immaturity, are incapable of appreciating the risk involved; and (4) the expense or inconvenience of remedying the condition is slight compared with the risk to the children. (*Kahn,* 5 Ill. 2d at 625, 126 N.E.2d at 842.) In such cases, there is duty upon the owner or person in possession and control of the premises to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it. (*Kahn,* 5 Ill. 2d at 625, 126

N.E.2d at 842.) Foreseeability of harm to children is the cornerstone of liability. *Corcoran*, 73 Ill. 2d at 326, 383 N.E.2d at 180."

If a landowner is responsible for preventing foreseeable harm to children who trespass upon the owners' property, surely the owner must be even more responsible in the case of a minor invited to purchase a ticket and to swim at the owner's public recreational beach facility.

In a very recent case involving an adult paralyzed as a result of diving into shallow water off a pier, the court ruled that, as a matter of law, the owner owed no duty to warn of the danger of paralysis to a reasonable adult because the risk was open and obvious. (*Dowen v. Hall* (1989), 191 Ill. App. 3d 903, 548 N.E.2d 346.) In that case, the court distinguished *Ford v. Wilson* and *Leonard v. Pitstick Dairy Lake & Park, Inc.* (1984), 124 Ill. App. 3d 580, 464 N.E.2d 644, on the ground that *Ford* and *Leonard* involved questions of negligence in failing to warn of dangers not open and obvious to *children*, whereas Dowen was an adult held to know the dangers of striking one's head during a flat dive into shallow water.

During the trial of the instant case, defendant argued before the jury that plaintiff was a trained swimmer, whereas the record on appeal indicates that plaintiff received about two weeks of beginning swimming instruction when he was in fourth grade. There is nothing in the record from which the jury could draw a valid inference that he knew that shallow water diving should be performed only by persons trained in lifesaving techniques, as was the testimony here. We think it obvious that this minor plaintiff had no actual knowledge of the risk involved in attempting a run-and-plunge dive; on the other hand, testimony of the manager employed by defendant corporation indicated that he *was* aware of the danger but nonetheless permitted beach patrons to engage in the kind of shallow dives performed here by plaintiff.

We note that no instructions were given to the jury concerning the duty to warn of unseen dangers imposed by the law of Illinois upon adults who are responsible for the safety of minors. However, we do not base our decision to reverse upon this omission.

Another error asserted by plaintiff is a ruling by the trial court which excluded evidence of subsequent similar accidents at defendant's beach. According to the offer of proof, approximately one week after Rick Leonard's accident, another teenage boy suffered a fractured neck at Pitstick Lake while attempting a run-and-plunge dive in shallow water. About one year later, yet another teenage boy suffered a broken neck there as a result of a run-and-plunge dive in shallow

water. Both of these latter accidents occurred at a different section of the beach than the place where plaintiff was injured, and in both cases, the boys did not suffer permanent paralysis. Plaintiff offered this evidence to show that to permit such dives in shallow areas is an unsafe practice, thereby responding to defendant's theory that run-and-plunge dives were not dangerous.

■■ The trial court excluded the evidence on the ground that evidence of subsequent occurrences is admissible to show the existence of a dangerous condition but subsequent accidents cannot be admitted to prove a dangerous practice. We consider this distinction to be a tenuous one. Defendant cites no cases which have so held.

A somewhat similar issue arose in *Churchill v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 127, 383 N.E.2d 929, a case arising out of the collision of a train with decedent's car on the tracks of a railroad crossing. The trial court had admitted testimony that the flasher lights at the crossing failed to operate on two occasions *after* the accident. The supreme court of Illinois ruled that this testimony was properly admitted for the limited purpose of rebutting the expert testimony of a defense witness who opined that it was impossible for the flasher system to malfunction.

An analogous situation was present here where evidence of subsequent accidents was offered after defendant elicited testimony that no shallow water diving accidents had previously occurred at Pitstick Lake, within the knowledge of manager Farson. Plaintiff had called Farson as an adverse witness under section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1102), which includes the following provision: "The party calling for the examination is not concluded thereby but may rebut the testimony thus given by countertestimony ***."

After plaintiff had completed his examination of Farson, defendant's counsel asked Farson:

"Q. The question I have for you, Mr. Farson, at any time before June 14, 1979, were you aware of anyone having seriously injured themselves performing a dive in shallow water at Pitstick Lake?

[Objection overruled.]

A. No."

When plaintiff later sought to respond to Farson's testimony with evidence of two subsequent accidents at Pitstick Lake, the trial court granted defendant's motion *in limine* to bar any reference to subsequent accidents. Still later during the presentation of defendant's case, owner Ed Pitstick was asked:

"Q. Ed, let me ask you this: at any time before June 14, 1979, had anyone to your knowledge hurt themselves doing the type of dive that you have heard Rick Leonard describe that he performed on that particular day?

A. No. No one has told me that."

During closing argument, defendant's counsel emphasized that no shallow water diving accident had ever been reported at Pitstick Lake and that defendant did not know such a common diving practice could be dangerous.

Although we do not hold that the trial court abused its discretion here, upon retrial, if defendant presents testimony of the absence of prior accidents from shallow dives, the court should consider admitting as rebuttal evidence the evidence of the occurrence of subsequent similar accident. Provided, of course, that the foundational requirements are met for the admission of such evidence (see *Wiedemann v. Industrial Erectors, Inc.* (1985), 137 Ill. App. 3d 47, 483 N.E.2d 990), it may be more fair to admit such testimony.

Plaintiff argues that the following evidentiary rulings were also erroneous:

1. Exclusion of certain State rules governing swimming pools which, plaintiff suggests, should apply to any artificial body of water.

2. Admission of evidence of the absence of any violations of State safety rules.

3. Admission of evidence that defendant corporation had no notice of any prior injuries at Pitstick Lake incurred in the course of shallow water diving.

4. Admission of evidence that defendant had a sign which prohibited running on the beach.

5. Cross-examination questions and closing argument comments by defendant's attorney characterizing the lake as a "good operation."

6. Admission of evidence that run-and-plunge dives were permitted at other swimming facilities.

7. Questions about signs at other facilities where the witness was not qualified as an expert on custom and usage.

It would needlessly lengthen this already long opinion to discuss each ruling in detail. We have examined each contention and find that each ruling was a matter within the sound discretion of the trial judge. Such issues must be considered within the context of the trial wherein they arise. In the context of the trial here before us, we cannot say that the trial court abused its discretion in any of the listed rulings, and we are not able to predict what factors will be present

should they arise again upon retrial.

We reverse the judgment of the circuit court of La Salle County and remand this cause for a new trial in accordance with this opinion.

Reversed and remanded.

SCOTT, J., concurs.

JUSTICE STOUDER, specially concurring:

I concur in the majority's holding that the instant case must be remanded for a new trial based on the failure of the trial court to give the tendered comparative negligence instruction. However, I must disagree with the court's discussion concerning two collateral issues.

The majority states that "[N]o instructions were given to the jury concerning the duty to warn of unseen dangers imposed by the law of Illinois upon adults who are responsible· for the safety of minors." (202 Ill. App. 3d at 827.) However, ever since *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836, the liability of owners or parties in possession and control of premises upon which a child is injured has been determined with reference to the customary rules of ordinary negligence. (See generally *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177; *Cope v. Doe* (1984), 102 Ill. 2d 278, 464 N.E.2d 1023.) The fact that an adult is dealing with a child is part of the determination of what constitutes ordinary care under the circumstances. The issue of whether an adult should use greater care and vigilance where the safety of a minor is involved goes to the question of what constitutes ordinary care under the circumstances. It does not entail a different standard of care. I also note the Illinois Supreme Court Committee on Jury Instructions in Civil Cases recommends that no instruction be given on the care required for the safety of a child. (Illinois Pattern Jury Instructions, Civil, No. 10.07 (3d ed. 1990).) The majority's reliance on *Ford v. Wilson* (1989), 184 Ill. App. 3d 374, 540 N.E.2d 1, is inapposite. *Ford* does not announce a contrary rule. The only issue in *Ford* was the sufficiency of the complaint on a motion to dismiss.

In addition, the majority implies that evidence of similar occurrences at the lake may be admissible without regard to whether it is offered as substantive evidence or as rebuttal. I do not find admission of subsequent occurrences as substantive evidence of negligence to be supported by the case law. The Illinois Supreme Court in *Churchill v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 127, 382 N.E.2d 1217,

upheld the admission of evidence which showed that flasher lights at a railroad crossing failed on two subsequent occasions. The evidence was held properly admitted for the limited purpose of rebutting the testimony of the defendant's expert "who opined that it was impossible for the flasher system to malfunction." In the instant case, the evidence of other incidents was not proffered to rebut the testimony of the defense witnesses. They were asked only about their knowledge of incidents occurring prior to June 14, 1979. Both witnesses denied prior knowledge and the offer of proof did not rebut this testimony. In any event, whether on retrial it would be proper rebuttal would depend on the precise testimony the rebuttal evidence was intended to refute, as well as whether the plaintiff has established an adequate foundation showing the relevance of the proffered rebuttal evidence. The majority concedes that the exclusion of this evidence was not an abuse of discretion, and I have great difficulty in finding a different result should be reached on retrial.

In any event, I view the majority's discussion of these two issues as nothing more than *dicta* and unnecessary to the disposition of this case.