Thomas Svienty, by His Father and Next Friend, John Svienty, Appellee, v. Pennsylvania Railroad Company, Appellant.

### Gen. No. 46,547.

First District, First Division.
January 9, 1956.
Rehearing denied February 1, 1956.
Released for publication February 27, 1956.

Robert H. Bierma, P. J. Cronin, and Harry I. Parsons, all of Chicago, for appellant; Charles D. Snewind, of Chicago, of counsel.

Francis J. Gariepy, and Charles E. Mallon, both of Chicago, for appellee.

JUDGE BURKE delivered the opinion of the court.
Thomas Svienty, a minor, sued the Pennsylvania Railroad Company to recover damages for personal injuries suffered as a result of defendant's alleged

negligence in the use, storage and disposal of switch heaters, and recovered a verdict for $55,000 upon which judgment was entered. Defendant's motions for a directed verdict, for judgment notwithstanding the verdict and for a new trial were denied, and it appeals.

There was little dispute about the facts. Plaintiff suffered his injuries at about 9:30 in the forenoon on Wednesday, December 8, 1948, in a large vacant lot located on the north side of 49th Place and approximately one block west of Hoyne Avenue in Chicago. Hoyne Avenue runs in a northerly and southerly direction and 49th Place in an easterly and westerly direction. The lot is bounded on the west by defendant's right of way, extends east more than a half block toward Hoyne Avenue, is in a thickly populated residential area and had been used by the children in the neighborhood as a playground for a number of years. Defendant's right of way and tracks at this point run in a northerly and southerly direction and are on the west edge of the lot. The lot also extends south from the south side of 49th Place. The record does not show the ownership of the lot. In the northwest corner and along the west edge of the lot there were dry weeds four feet high. Railroad tracks running in an easterly and westerly direction and bounding the north of the lot are elevated. These elevated tracks cross over the right of way of the defendant. Defendant maintains that its right of way is also elevated. We find, however, that the weight of the evidence establishes that defendant's tracks and right of way are level with the adjoining property used as a playground.

The Svientys resided on the first floor of a two-flat building at 4936 South Hoyne Avenue, the back door of which is approximately 600 feet east of defendant's right of way. The children used the lot in playing football, baseball, flying kites and ice skating. There was a baseball diamond in the northwest corner of the lot close to defendant's right of way. Plaintiff was six

362

years of age at the time of the occurrence. The defendant's tracks were visible from the rear of his home. Plaintiff's injuries were sustained when he and other small boys were playing with some railroad switch heaters owned by the defendant which had been disposed of by defendant's employees along its right of way and in the vacant lot adjoining it.

There are ten switches or turnouts with crossover to permit switching at this point on the right of way. In winter the heaters are placed under the switches to prevent snow from freezing in the switches. About twenty of these heaters are brought out from the yards in September of each year and are picked up in April of the following year. The heaters are made of iron and are about 20 inches long, 6 inches high and 5½ inches wide. Each heater weighs about 20 pounds and holds about 2½ gallons of kerosene. There are two openings on the top of each heater through which it is filled with kerosene. Each opening is equipped with a heavy steel cover. The cover is attached to the heater by means of an iron chain 3 or 4 inches long. The heaters are placed underneath the switches between the ties and are not fastened. When the ground is frozen they cannot be easily removed. Each heater is equipped with handles at both ends. In the center of the heater is a burner. The cover of the burner should be kept on when the heater is not in use. The heater is lit by means of a blowtorch. The amount of kerosene in the heater permits it to burn 4 or 5 hours.

On the morning of the occurrence plaintiff and four other boys went to the lot to play with the switch heaters. Because of the observance of a religious holiday at the school they attended the boys were not in school. When they got to the lot they started playing with the switch heaters. They saw 20 or 25 of the heaters scattered around the west side of the lot. Some of the heaters were turned the "wrong way, some were upside down and some were not." Some of the heaters

"had tops and about one half had no tops." Some were filled with liquid, some were half full and "a couple of them were empty." The boys proceeded to carry 10 or 15 of the switch heaters with no tops over to some weeds on the north side of the baseball diamond to burn the weeds so that they would not lose the ball when playing baseball. All of the boys, including plaintiff, participated in carrying the switch heaters by the handles. They then spilled the contents from the heaters over the weeds. Two of the heaters were burning under the tracks alongside the playground. Two of the boys carried one of the heaters to the tracks where they lit it from a heater which was burning under one of the switches and carried it back to the weeds. The heater was then thrown on the weeds which were ignited. Plaintiff was wearing long corduroy pants. When he helped carry some of the heaters over to the weeds he got oil all over his pants. When he walked too close to the fire, his pants caught fire. One of the boys extinguished the fire on plaintiff's clothing. Plaintiff was carried home and then to a physician. He was painfully burned. There is no contention that the judgment is excessive.

We cannot agree with defendant that plaintiff failed to produce any evidence entitling him to invoke the doctrine of attractive nuisance. The boys went to the lot to play with the switch heaters. They had played with them on the lot on many other occasions. The heaters were made of metal and contained an explosible, combustible, ignitible fluid. Each heater had handles which made it easy to carry, and a handle on the top which slid back and forth. There was a large 4-inch wick in the center which lifted out. There were no tops on some of the heaters with which the boys were playing. Other children in the neighborhood had also played with the heaters on other occasions. They used the heaters to start fires to keep warm. They used them to keep warm during the ice skating season. The

right of way was on the same level as the adjoining lot and there was no way of telling where the right of way ended and the lot or playground began. The children used the lot as a play field. There was a baseball diamond worn into the surface of the northwest corner of the lot close to defendant's right of way. The switch heaters were dangerous for young children to play with. Defendant's track foreman testified that it would be dangerous to light the switch heaters with a match "because you have to get too close and they would explode."

The evidence shows that for a long time prior to the occurrence the defendant had actual notice that the children played with the switch heaters. The children had taken the switch heaters and also lit them in the presence of defendant's workmen and the latter had never taken the heaters from them, nor told the children not to play with the heaters. There was testimony that on occasion the children would ask defendant's workmen for the switch heaters and that the workmen would give the heaters to the children. The evidence established that when the switch heaters were not in use they were not placed or stored in any shed or container. No effort was made to pick them up or to store them on the far or west side of defendant's right of way instead of the adjoining lot used as a playground on the east side of the right of way. Nothing was done to warn the children of the danger in playing with the heaters. We have no hesitancy in stating that under the authorities the court was right in deciding that whether or not the defendant was negligent in maintaining an attractive nuisance was a question of fact for the jury. See Kahn v. James Burton Co., 5 Ill.2d 614.

We turn to a consideration of defendant's contention that the presence of the heaters was not the proximate cause of the injury to the plaintiff. It argues that the heater was harmless and incapable of causing

injury to the plaintiff and that the proximate cause of the injury was not the heater but the acts of plaintiff and his companions in trespassing on defendant's right of way, where they lit one of the heaters, removed the lighted heater to the weeds and started the fire, and that the intentional starting of the fire was the proximate cause of the mishap. We think that the defendant should have foreseen that children could be seriously burned in playing with the heaters. Defendant knew that the heaters contained a volatile, explosible liquid. Where injuries to a minor are caused by a device inherently dangerous or containing an explosible or combustible fluid, the act of the child in playing with it or lighting it with a match is not an intervening cause. Featherstone v. Freeding, 349 Ill. App. 359; Zazkowski v. Choyce, 324 Ill. App. 582 (Abst.); Shapiro v. City of Chicago, 308 Ill. App. 613. We find that under the facts of this case the court was right in submitting to the jury the question of probable cause.

■ Defendant states that the trial judge committed reversible error in instructing the jury in the language of the statute that it "shall be unlawful for any person, firm, association or corporation to keep, store, transport, sell or use any crude petroleum, benzine, benzol, gasoline, naphtha, ether or other like volatile combustibles or other compounds, in such manner or under such circumstances as will jeopardize life or property." Defendant asserts, without citing authority, that this statute is inapplicable to the facts of the case. There was competent evidence from which the jury could find that the defendant kept and used a volatile and combustible liquid in such manner or under such circumstances as to jeopardize life and property. See Bandosz v. Daigger & Co., 255 Ill. App. 494; Zazkowski v. Choyce, 324 Ill. App. 582 (Abst.).

Defendant insists that a jury reading the instruction would assume a violation of the statute because someone was injured by a volatile combustible. The giving

of an abstract instruction of this nature should not be encouraged. Under the factual situation we do not believe the defendant was harmed by the instruction. ■ We cannot agree with the contention of defendant that the verdict was the result of prejudicial and improper argument. Finally, the defendant urges that the judgment is contrary to the manifest weight of the evidence. A careful reading of the record convinces us that the judgment is supported by the evidence and that it should be affirmed. Therefore, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

FRIEND, P. J. and NIEMEYER, J., concur.