(No. 56384.—

ROBERT LEE FELDSCHER, a Minor, Appellant, v.
E & B, INC., Appellee.

*Opinion filed March 25, 1983.*

Robert A. Chapski, Ltd., of Elgin (Jonathan L. Carbary, of counsel), for appellant.

McKenna, Storer, Rowe, White & Farrug, of Wheaton (Jay H. Tressler and Michael F. Dahlen, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

This appeal is from a summary judgment in an action for personal injuries. Robert Lee Feldscher (hereafter Bobby) brought the action by his father and next friend, Robert F. Feldscher, against the defendant, E & B, Inc., doing business as Maaco Auto Painting & Body Works (Maaco). The suit was brought for burns received by Bobby while playing with friends on Maaco's property. The circuit court of Kane County entered summary judg-

ment for Maaco, and the appellate court affirmed in a Rule 23 order (73 Ill. 2d R. 23). (102 Ill. App. 3d 1201.) We granted the Feldschers' petition for leave to appeal under Rule 315 (73 Ill. 2d R. 315).

The Feldschers' complaint alleged that Maaco owned and operated an auto-painting and body shop in a section of Elgin where many young children lived. According to the complaint, on August 6, 1978, and for a long time prior thereto, the defendant "operated" an unfenced "open area," "as a place upon which to deposit and discard various kinds of open drums and cans of volatile liquids, thinners, gasoline type liquids, and other conbustibles [sic], all of which were used by defendant." One of the drums, a 55-gallon drum, the complaint stated, contained a paint thinner, "Toluol." This drum had a pump that was "unsecured and unguarded" and, like all the drums and cans of volatile liquid on the premises, was "freely accessible to anyone." The Toluol was flammable and had characteristics similar to gasoline.

The complaint alleged that the materials were attractive to the children in the neighborhood; that on August 6, 1978, and for a long time prior to that date, many children played in the open area and around the drums; that the defendant knew, or by the exercise of reasonable care could have known, that the materials "were dangerous and naturally attractive and enticing to children of tender years, and that said children would be, and were, attracted and enticed to handle, investigate and play with, in, on, about and around the same, and that the materials were easily accessible and seen by children." It was the defendant's duty, therefore, the complaint set out, to use care in the storage and operation of the materials so the children would not be injured. The defendant, however, allegedly breached the duty by not fencing off the area and by permitting the materials "to be and remain in an open and exposed con-

dition." Keeping the materials in such a manner violated, it was claimed, section 1 of "An Act to regulate the storage, transportation, sale and use of gasoline and volatile oils" (Ill. Rev. Stat. 1977, ch. 127½, par. 153), which makes it a petty offense for any person to store gasoline or similar volatile combustibles "in such manner or under such circumstances as will jeopardize life or property." Also, the complaint alleged that the storage was contrary to the fire-prevention code of the city of Elgin.

The complaint stated that Bobby Feldscher was seven years old on August 6, 1978, and was exercising due care for his safety commensurate with his age and intelligence. On that date, he and several other children who lived in the area went upon Maaco's property. They were accustomed to playing "on, in, around and upon it," and were "attracted, enticed and invited" to it. At that time, one of the drums of combustible liquid was ignited, causing Bobby severe injuries. The complaint sought damages of $1 million.

Maaco moved for summary judgment and filed discovery depositions of Bobby and his parents. According to the depositions, on August 6, 1978, Bobby was visiting his father, who lived next door to Maaco's body shop. Robert Feldscher's house was to the rear of Maaco's garage and adjacent to Maaco's parking lot. Bobby's parents were divorced and Bobby lived with his mother. To the best of his father's knowledge, Bobby was the only child living within a block of Maaco.

August 6 was a Sunday and Maaco was closed. Bobby was playing with his friends Douglas, Tony and Terry, who were older children. Bobby had gone to Douglas' house that morning. The boys were playing hide-and-seek when Douglas got the idea of starting a fire. Douglas, who was 10 years old but called "Baby," took a sprinkling can from the garage of a woman who lived

next door to Maaco's shop and got some matches from a nearby liquor store. Bobby, in his deposition, stated that he watched Douglas take those items, but that he did not know what Douglas was going to do with them.

The boys proceeded to Maaco's property. There Douglas pumped what he said was gasoline from a large drum. Douglas filled the sprinkling can and another can with the "gas" and poured it into some beer and soft drink cans. He taped six beer and pop cans together and touched a match to them.

The cans were supposed to explode; however, a fire started. Some paper was burning on the ground and Douglas threw the six burning cans into a garbage dumpster and tossed paper into the dumpster. Bobby said at the time of his deposition that Douglas "put too much [gasoline into the cans]. You are supposed to dunk it in and dunk it out fast. So, that's how it caught on fire ***." Tony and Terry took paper from the dumpster and threw it on the fire. Douglas splashed some of the paint thinner onto Bobby's pants and pushed Bobby into the burning gasoline on the ground. Bobby suffered burns on the legs. That was the first time that Bobby or any of the boys had played at making firebombs. Bobby had never seen it done before, and Douglas learned, Bobby said, about making the firebombs from an older brother.

Bobby returned to his father's house from Maaco with his shoes and pant legs burning. Both of Bobby's parents had told him not to play at Maaco and to their knowledge he never had before the day of the fire. When Bobby's friends came to visit, they played in the back yard, not at Maaco. August 6, 1978, was the first time that there had been a fire at Maaco.

Opposing the motion for summary judgment, the plaintiffs submitted an affidavit of George Van De-Voorde, the chief of the Elgin fire department. In it he

said that he had found on the defendant's premises at the time of the fire "four 55 gallon drums full of waste liquid that looked and smelled like old paint and reducer with no caps on them, one 55 gallon drum of Toluol with a red flammable sticker with a pump in it ***, a sprinkling can about half full of some kind of thinner and two dumpsters of trash and cans." The chief said that both Toluol and gasoline are highly flammable, and that the Elgin fire-prevention code requires that an outside storage area for flammable liquids must be protected against tampering or trespass.

The plaintiffs also submitted an unsworn statement which had been given to an insurance company by Michael Arians, Maaco's general manager. In it, Arians said that he examined the premises after the fire. Behind the shop there were some 55-gallon drums belonging to Maaco. Some were empty, some had water, and one had a little thinner left on the bottom. A short distance from those drums were two charred smaller cans, a gasoline can and a sprinkling can, neither of which belonged to Maaco and neither of which had been there before the day of the fire, he said. Also, a garbage dumpster that belonged to the disposal company that picked up Maaco's refuse appeared to have been burned.

Arians believed that the drum with the paint thinner probably had been in the rear area for a few days, and had been placed there by the body-repair men and painters when it was nearly empty. On the day of the fire no employees were at the shop. Maaco's refuse pickup days were Monday, Wednesday and Friday.

Arians had never seen children in the area where the fire took place, although he had chased children from a lot beside Maaco. He had seen Bobby in the showroom and repair areas several times, and he had told Bobby to leave.

Maaco objected to the admission of the fire chief's af-

fidavit and the unsworn statement of Arians, but did not obtain a ruling on the question from the trial court. Under the circumstances, the objection was waived. (See *Department of Public Works & Buildings v. Anastoplo* (1958), 14 Ill. 2d 216, 222.) The trial court stated at the time it entered judgment that it had considered all of the evidence and pleadings before it.

We consider that the court properly entered summary judgment for Maaco. Under section 57 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57), a defendant may move for summary judgment at any time. Judgment will be entered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Our Rule 212 (73 Ill. 2d R. 212) provides that a discovery deposition may be used for any purpose for which an affidavit may be used.

In *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, this court considered a landowner's legal duty toward trespassing children. In *Kahn,* where a boy of 11 years was injured when a construction lumber pile upon which he was playing toppled, this court stated:

"It is generally true, as defendant contends, that an owner or one in possession and control of premises is under no duty to keep them in any particular state or condition to promote the safety of trespassers or others who come upon them without any invitation, either express or implied. [Citations.] It is also established that infants, as a general rule, have no greater rights to go upon the land of others than adults, and that their minority of itself imposes no duty upon the occupier of land to expect them or prepare for their safety. [Citations.] It is recognized, however, that an exception exists where the owner or person in possession knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by

reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children. In such cases there is a duty upon the owner or other person in possession and control of the premises to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it." 5 Ill. 2d 614, 625.

Usually, suits against landowners for injuries to trespassing children were brought under the doctrine of attractive nuisance. In such cases, courts adopted the fiction that the defendant had enticed the child to come on his premises by maintaining a structure that was attractive to the child. (See Prosser, Torts sec. 59, at 364-66 (4th ed. 1971); Weisiger, *Tort Liability of Minors and Incompetents,* 1951 U. Ill. L.F. 227, 237-40; Comment, *The Landowner's Duty Toward Minor Children in Illinois,* 42 Chi.-Kent L. Rev. 183 (1965).) Regarding this notion this court in *Kahn* stated:

"[A] child in his youthful fancy, imagination and ingenuity can make a plaything of almost anything and is attracted by almost everything [; therefore], the only proper basis for decision in such cases dealing with personal injuries to children are the customary rules of ordinary negligence cases.

\*\*\* The element of attraction is significant only in so far as it indicates that the trespass should be anticipated, the true basis of liability being the foreseeability of harm to the child." 5 Ill. 2d 614, 624-25.

In *Driscoll v. C. Rasmussen Corp.* (1966), 35 Ill. 2d 74, this court applied the reasoning and principles stated in *Kahn.* In *Driscoll,* a seven-year-old boy was burned while playing on a trash pile near a building under construction. The defendant was the company that was constructing the building. In the course of construction, a trash pile accumulated in the back of the building near an alley. On the pile were discarded pieces of wood, broken bricks, cartons, cans and other scrap.

The plaintiff lived across the alley. On a Sunday, he, a younger brother and another boy, John Woods, were playing with the materials on the trash pile. John's father was raking leaves in his front yard and burning them in his back yard in a container that was about 15 feet from the trash pile. While Mr. Woods was in the front of the house, the boys took some sticks, ignited them from the burning leaves, carried them to the trash pile and inserted them into old paint cans that then caught fire.

The father saw the burning cans, and admonishing the boys, put out the fires. After he returned to the front of the house, the boys again ignited sticks and the residue in the paint cans. Some sealed cans contained a considerable amount of paint and lacquer, and the boys opened them. The plaintiff accidentally splashed some paint or lacquer and his pants caught fire, causing severe burns on his leg.

Judgment for the plaintiff was entered for $35,000, but this court held that the trial court had erred by not directing a verdict for the defendant. This court considered that although a trash pile containing paint cans may be attractive to children, it could not be considered dangerous of itself or the proximate cause of the plaintiff's injury. The court explained that paint or lacquer are not explosives nor are they intrinsically dangerous. The court recognized that paint and lacquer are combustible, but they are dangerous only if ignited or brought into contact with fire. A person could not reasonably be required to anticipate such extraordinary uses or actions in the absence of circumstances putting him on notice to anticipate such action. "Defendant could hardly have foreseen that cans might be opened, the contents splashed on clothing and the clothing later ignited by fire obtained at other places. Such is not the natural and probable consequence of maintaining a trash pile." 35 Ill. 2d 74, 78.

The court also stated:

> "Every person owes to all others a duty to exercise ordinary care to guard against injury which may natu-

rally flow as a reasonably probable and foreseeable conse-
quence of his actions, and a person in possession or con-
trol of premises frequented by small children has an obli-
gation not to maintain conditions which are dangerous or
hazardous to them in view of the attendant circum-
stances. (See *Kahn v. James Burton Co.* [1955], 5 Ill. 2d
614.) But he is not an insurer of their safety. The general
rule is that liability must be based on some fault. The in-
jury must be the natural and probable result of a negli-
gent act or condition and be of such a character as an or-
dinarily prudent person ought to have foreseen as likely
to occur as a result of the negligence. An injury is not ac-
tionable that could not have been foreseen or reasonably
anticipated as its probable consequence and that would
not have resulted had not some new and independent
cause intervened to produce it. [Citation.]
\*\*\*

The mere fact that this small boy was injured does
not authorize a presumption or inference that the trash
pile was dangerous or that the contractor was negligent
in maintaining it. It is always unfortunate when a child
gets injured while playing, but a person who is merely in
possession and control of the property cannot be required
to indemnify against every possibility of injury thereon.
The responsibility for a child's safety lies primarily with
its parents, whose duty it is to see that his behavior does
not involve danger to himself. Others can be held respon-
sible for injuries only if they are at fault under some rec-
ognized theory of liability." 35 Ill. 2d 74, 78-79.

The circumstances here cannot be distinguished in any
important respect from those in *Driscoll;* the circum-
stances are nearly identical. As in *Driscoll,* there was
nothing in the evidence here to put the defendant on notice
of the extraordinary events that followed. Probably the
only significant difference between the facts here and
those in *Driscoll* is that in *Driscoll* the plaintiff apparently
was burned accidentally, while here Bobby was burned as a
result of the malicious conduct of another boy. Generally,
however, courts have judged that malicious acts are less
foreseeable than merely negligent acts. (Prosser, Torts sec.

33, at 173 (4th ed. 1971).) The circuit court here recognized that the holding in *Driscoll* was not distinguishable and properly entered judgment for the defendant.

The plaintiffs, however, contend that it was error for the court not to submit the case to the jury. Citing *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, they say that the violation of a statute designed to protect life or property is *prima facie* evidence of negligence. They contend that the issue of proximate cause was one of material fact for the jury, and, as they did in the circuit court, they cite *Svienty v. Pennsylvania R.R. Co.* (1956), 8 Ill. App. 2d 360, which was decided after this court decided *Kahn,* but before it decided *Driscoll.*

The plaintiffs' argument is not convincing. A violation of the statute prohibiting the storage of volatile combustibles "in such a manner or under such circumstances as will jeopardize life or property," as the complaint alleged, was by no means clearly established here. The Toluol was in a self-contained drum and caused damage only when it was intentionally pumped out and ignited. But even assuming there was a violation, the relevancy of it would extend only to the issue of whether the landowner had acted with less than reasonable care. It would not have the effect of creating a duty to Bobby where none existed. (*Washington v. Atlantic Richfield Co.* (1976), 66 Ill. 2d 103, 109.) And of course a statutory violation does not obviate the need to determine whether the defendant's conduct proximately caused the injury. (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 390.) On the issues of duty and proximate cause, *Kahn* and *Driscoll* are dispositive of this case.

In *Svienty,* the decision upon which the plaintiffs rely, the court affirmed a judgment for a minor who suffered burns when his pants caught fire while playing with railroad switch heaters. The heaters, which contained kerosene and had wicks, were lit by railroad employees to keep switches from freezing in winter. The defendant discarded

heaters on its right-of-way near the plaintiff's home.

The circumstances in *Svienty* and the circumstances here, however, differ in an important way. In *Svienty* the evidence showed that for a long time the defendant had actual notice that the children played with the heaters. Children used the heaters to stay warm during ice-skating season. The children had taken and lighted the heaters in the presence of railroad workmen, and the workmen never took the heaters from the children, or warned them not to play with the heaters. Too, there was testimony that on occasion the workmen would give heaters to the children at the children's asking. There was a basis in the evidence for the *Svienty* court to judge that the injury to the plaintiff was reasonably foreseeable.

For the reasons given, the judgment of the appellate court affirming the summary judgment of the circuit court is affirmed.

*Judgment affirmed.*