RICKIE BIER *et al.*, Plaintiffs-Appellants, v. LEANNA LAKESIDE PROPERTY ASSOCIATION, Defendant-Appellee.

Second District No. 2—98—0331

Opinion filed May 19, 1999.

Carl F. Schroeder, of Carl F. Schroeder, Ltd., of Wheaton, for appellants.

Karen L. Kendall, John C. Mulgrew, Jr., Kevin J. Luther, and Janet E. Lanpher, all of Heyl, Royster, Voelker & Allen, of Rockford, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

The plaintiffs, Rickie Bier (hereinafter, the plaintiff) and Kathy Bier (collectively, the plaintiffs), filed a two-count complaint against the defendant, Leanna Lakeside Property Association, seeking damages for personal injuries and loss of consortium sustained by the plaintiffs when Rickie fell from a rope swing into the defendant's lake. The trial court dismissed the plaintiffs' complaint, finding that the rope swing was an open and obvious danger, and, therefore, the defendant did not owe the plaintiff a duty as a matter of law. The plaintiffs appeal.

## PLAINTIFFS' SECOND AMENDED COMPLAINT

The plaintiffs' second amended complaint alleged that the defendant was an association of five or more homeowners that owned, operated, maintained, and controlled a lake and bathing beach. According

to the complaint, the defendant erected and maintained a ladder and rope swing[1] that were connected to a tree at its beach adjacent to the lake and that it intended swimmers to use to swing out over the lake and fall or dive into it. While lawfully on the property, the plaintiff used the rope swing and fell into the lake, hitting his head on the lake bottom. As a result, he sustained a fractured neck and was rendered a quadriplegic.

The second amended complaint further alleged that the defendant was negligent in one or more of the following respects: (1) inviting swimmers to swing from the rope into the lake when it was not safe to do so; (2) erecting and maintaining the rope swing over water it knew or should have known was too shallow for diving or falling into the lake; (3) providing a "diving facility" over water that was shallower than the minimum depth required by the Illinois Swimming Pool and Bathing Beach Act (Beach Act) (210 ILCS 125/5, 13 (West 1994); 77 Ill. Adm. Code §§ 820.500(b)(1), (b)(2) (1996) (now, as amended and renumbered, at 77 Ill. Adm. Code §§ 820.400(b)(2), (b)(3)(A) (eff. May 15, 1998))); (4) failing to identify water of less than five feet in depth by lines and buoys contrary to and in violation of the Beach Act (210 ILCS 125/5, 13 (West 1994); 77 Ill. Adm. Code § 820.500(b)(3) (1995) (now, as amended and renumbered, at 77 Ill. Adm. Code § 820.400(b)(4) (eff. May 15, 1998))); and (5) contrary to and in violation of section 4 of the Beach Act (210 ILCS 125/4 (West 1994)), failing to apply for and obtain a license to operate the lake as a bathing beach, the application for which would have required an inspection by officials of the State of Illinois who would have required the removal of the rope swing as a condition of a license being issued.

The second amended complaint also alleged that the plaintiff failed to appreciate the risk posed by the rope swing because he had observed others use the swing without injury prior to his use. The plaintiff further stated in his complaint that the defendant should have anticipated the harm since it had erected and invited people to use the rope swing, and the plaintiff would not have realized the danger presented because it appeared reasonable that the advantages to using it outweighed the apparent risk.

## THE DEPOSITION TESTIMONY

The deposition testimony in the record reveals that the plaintiff was present at the defendant's beach on the date of the accident

---

[1]The record indicates that there were actually two ropes tied to the same tree near the shore of the defendant's lake. Throughout this opinion the terms "rope," "ropes," and "rope swing" will be used interchangeably unless otherwise indicated.

because he was invited to a party at the beach by a fellow teacher, Daryl Mertz. Mertz was a shareholder of the defendant and owned a home on the lake. The lake and beach were private and were for members only. However, members were allowed to invite others to the lake and beach. Members of the lake paid three different types of dues in exchange for various privileges at the lake, including the right to use the lake.

The ladder and rope swing that the plaintiff used on May 30, 1994, the day of his injury, had been there since at least 1987. Several members of the defendant association acknowledged that they had seen the rope and ladder on prior occasions, although nobody knew who actually placed the ropes and ladder there. Every spring, members of the association would participate in a spring cleanup at the lake. During those cleanups, the rope and ladder were present. There was nobody on the defendant's board of directors who had the responsibility of maintaining the rope swing, but at least one of the members of the board testified in his deposition that the maintenance of the ladder and ropes fell under the authority of the board of directors. Furthermore, the board had never adopted any rules or regulations governing the use of the rope swing. Marika Mertz, one of the members of the defendant's board of directors, testified in her deposition that on the day of the plaintiff's injury she had used the rope to swing out and drop into the lake.

On the day of the plaintiff's accident, the persons using the rope swing were falling into the water from a height of 6 to 20 feet. The depth of the water in that location was between $4\frac{1}{2}$ and 6 feet deep.

The plaintiff testified in his deposition that he was an experienced swimmer and that five or six people had used the rope swing before he did on the day in question. On his first swing, he had used the longer of two ropes that hung from the tree and did not elevate very high. According to the plaintiff, he did not attempt a back flip or try to land head first. He noted that he landed on his butt.

The plaintiff further testified that he sustained his injury on his second attempt at using the rope. For his second swing, the plaintiff used the shorter of the two ropes. According to the plaintiff, he lost his grip as he was swinging out over the lake and fell off the rope. As he was falling, he did not know if he was oriented up or down. He noted that he was not trying to do a back flip and did not intend to land in the water head first. He also noted that he had intended to complete his swing and land farther out in the water than he did.

Roger Ruden, the regional engineer for the Illinois Department of Public Health (the Department), testified that prior to the plaintiff's injury the defendant had not applied for a license to operate its beach

as required by the Beach Act. After the plaintiff's injury, the Department contacted the defendant association and requested that the defendant obtain a license. On June 19, 1995, the Department inspected the beach and a license was subsequently issued. However, the defendant had removed the rope swings prior to the June 19, 1995, inspection. To obtain its license, the defendant was required to place signs at the beach describing safe markers between wading, swimming, and diving areas as an indication of the limits of safe bathing.

Ruden further testified that in August 1980 the Department published a document entitled "Requirements for Bathing Beaches," which stated, in part, "Rope swings are prohibited unless the water depth required in Item 8[ ] is provided, including 12 feet from any possible point of release." Item 8 sets forth the minimum water depths for diving facilities as listed in the Illinois Swimming Pool and Bathing Beach Code (Beach Code) (77 Ill. Adm. Code § 820 et seq. (1996)), requiring a minimum depth of 9½ feet for devices 0 to half a meter above water. According to Ruden, the Department had determined that rope swings were dangerous and had interpreted them as being diving facilities for purposes of the Code and Act. Ruden noted that the highest release point of a rope swing would be the height used to calculate the depth of water for purposes of compliance with the Department's requirements for diving facilities. Since it would be nearly impossible to envision a rope swing that could comply with the requirements for a diving facility, rope swings were essentially prohibited. He also noted that he had never seen a license granted to a bathing beach that had a rope swing. Ruden stated that if one of the Department's inspectors had discovered the rope swing at issue in this case, the defendant would have been asked to remove the swing and would not have been issued a license until it was removed. Furthermore, if the defendant continued to operate the beach without a license and with a rope swing, the Department would have pursued an enforcement action against the defendant to close the beach for operating a beach without a license. Ruden explained that its power to do so was derived from its interpretation that rope swings constituted an immediate danger to health and safety pursuant to section 21 of the Beach Act (210 ILCS 125/21 (West 1994)). Ruden acknowledged that the rope swing constituted an open and obvious danger.

## PROCEDURAL HISTORY

In October 1994, the plaintiffs filed a two-count complaint against the defendant. Count I alleged common-law negligence and count II alleged loss of consortium on behalf of plaintiff Kathy Bier. The defendant filed a motion to dismiss the complaint pursuant to section

2—619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—619 (West 1996)). The trial court granted the motion to dismiss, finding that the defendant owed no duty to the plaintiffs on the basis that the alleged danger was an open and obvious condition. The plaintiffs were allowed to replead and eventually filed a second amended complaint alleging common-law negligence and violations of the Beach Act and Beach Code (210 ILCS 125/4, 5, 13 (West 1994); 77 Ill. Adm. Code §§ 820.500(b)(1) through (b)(3) (1996)). The defendant again filed a motion to dismiss the plaintiffs' complaint pursuant to section 2—619 of the Code. The trial court dismissed the allegations of the complaint sounding in common-law negligence but refused to dismiss the remaining allegations relating to duties arising out of the Beach Act and Beach Code. After discovery in the case was substantially completed, the defendant filed a motion for summary judgment based on the following arguments: (1) the defendant was entitled to immunity from suit under the Recreational Use of Land and Water Areas Act (745 ILCS 65/1 *et seq.* (West 1994)); (2) the defendant's Beach Act claim was inapplicable under the facts of this case; (3) the "open and obvious condition" doctrine precludes recovery under the facts alleged; (4) the defendant is entitled to partial summary judgment on the basis of the affirmative defense of comparative fault; and (5) the defendant's conduct was not the proximate cause of the plaintiff's injuries. The trial court denied the defendant's motion. The defendant then filed a motion to reconsider its summary judgment motion. The trial court granted the motion for summary judgment, finding that the condition upon the defendant's land was open and obvious and that the Beach Act did not establish that the plaintiff owed the defendant a duty.

## SUMMARY JUDGMENT STANDARD

In appeals from summary judgment rulings, we conduct a *de novo* review of the evidence in the record. *Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill. 2d 1, 7 (1997). Summary judgment should be granted only if the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1996); *Nowak v. Coghill*, 296 Ill. App. 3d 886 (1998). Summary judgment is a drastic means of resolving litigation and should be allowed only when the right of the moving party is clear and free from doubt. *Goennenwein v. Rasof*, 296 Ill. App. 3d 650, 653 (1998).

## ANALYSIS OF DUTY UNDER COMMON-LAW NEGLIGENCE THEORY

On appeal, the plaintiffs argue that the trial court erred in grant-

ing summary judgment for the defendant. As one basis for reversal of the trial court's judgment, they contend that their second amended complaint properly alleged that the defendant owed a duty under a common-law negligence theory. Relying on *Wind v. Hy-Vee Food Stores, Inc.*, 272 Ill. App. 3d 149 (1995), *Pleasant v. Blue Mound Swim Club*, 128 Ill. App. 2d 277 (1970), and *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435 (1996), they argue that the "open and obvious risk" rule should not be applied in this case to prevent the imposition of a duty upon the defendant where the defendant actively created the risk and invited persons to encounter it. Furthermore, they maintain that, even if the rope swing was an open and obvious risk, the case fell under the exception to the no-liability rule set forth in section 343A of the Restatement (Second) of Torts (Restatement (Second) of Torts § 343A (1965)) as applied in such cases as *Ralls v. Village of Glendale Heights*, 233 Ill. App. 3d 147 (1992), and *Ward v. K mart Corp.*, 136 Ill. 2d 132 (1990).

In response, the defendant contends that the open and obvious nature of the rope swing precluded any duty being owed to the plaintiff, citing *Bucheleres*, 171 Ill. 2d 435, and *Logan v. Old Enterprise Farms, Ltd.*, 139 Ill. 2d 229 (1990). The defendant also argues that the applicability of the "open and obvious condition" doctrine was not abrogated by the fact that it may have created the condition, citing *Carey v. J.R. Lazzara, Inc.*, 277 Ill. App. 3d 902 (1996), *Wind*, 272 Ill. App. 3d 149, *Dowen v. Hall*, 191 Ill. App. 3d 903 (1989), and *Hagy v. McHenry County Conservation District*, 190 Ill. App. 3d 833 (1989).

■ To properly state a cause of action for negligence, a plaintiff must establish the following elements: that the defendant owed a duty of care to the plaintiff; that the defendant breached that duty; and that the breach was the proximate cause of the plaintiff's injuries. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 116 (1995); *Nowak*, 296 Ill. App. 3d at 892. The existence of a duty is a question of law for the court to decide, and the issues of breach and proximate cause are generally factual matters for the jury to decide, unless there is no genuine issue of material fact regarding those issues. *Nowak*, 296 Ill. App. 3d at 892. If the plaintiff fails to establish an element of the cause of action, summary judgment for the defendant is appropriate. *Nowak*, 296 Ill. App. 3d at 892.

A number of Illinois cases would suggest that the rope swing in the present case was an open and obvious condition for which the defendant owed the plaintiff no duty. In *Logan*, 139 Ill. 2d 229, the 15-year-old plaintiff climbed a tree to loosen a rope swing from a branch in which it had become entangled. As the plaintiff began to climb back down the tree, he fell and severely injured himself. The plaintiff's

complaint alleged that the landowner failed to maintain its premises in a safe condition and failed to warn the plaintiff of the dangerous conditions existing on the premises. The plaintiff contended that the combination of the tree, the rope swing, and a nearby ladder interacted to create a dangerous condition. Our supreme court affirmed the trial court's finding that the defendant did not owe the plaintiff a duty upon which liability could be predicated. *Logan*, 139 Ill. 2d at 240. In so doing, the supreme court concluded that "the risk of falling out of the tree was an obvious danger which plaintiff was reasonably expected to understand and appreciate." *Logan*, 139 Ill. 2d at 241.

In *Hagy*, 190 Ill. App. 3d 833, the teenage plaintiff was severely injured when he dove from an embankment into the conservation district defendant's "swimming hole" and struck his head on the creek bed below. The trial court granted summary judgment for the defendant on the ground that the defendant had no duty to remedy the condition on the premises because it posed an obvious risk. On appeal, the plaintiff argued that three risks had been identified as obvious to children, *i.e.*, fire, water, and falling from height, and the trial court had expanded the list by finding as a matter of law that diving into water was a danger obvious to children. *Hagy*, 190 Ill. App. 3d at 839. The reviewing court noted that the plaintiff's contention that there were no dangers other than water, fire, or heights that would be considered obvious was unsupported by authority "and, in fact, is contrary to the clear language of section 339 [of the Restatement (Second) of Torts], which recognizes there are *'many dangers* \*\*\* which under ordinary conditions may reasonably be expected to be fully understood and appreciated *by any child of age to be allowed at large.'* " (Emphasis in original.) *Hagy*, 190 Ill. App. 3d at 840, quoting Restatement (Second) of Torts § 339, Comment *j*, at 203 (1965). Thus, the reviewing court found that the trial court was correct in its opinion that the defendant owed no duty to the plaintiff where the plaintiff at least had knowledge of the condition equal to that of the defendant and was able to appreciate the risk involved but nevertheless chose to undertake it. *Hagy*, 190 Ill. App. 3d at 840.

In *Dowen*, 191 Ill. App. 3d 903, the court held that the danger of paralysis resulting from a flat dive off a pier into muddy waters of uncertain depth of a natural lake is open and obvious to a reasonable adult. *Dowen*, 191 Ill. App. 3d at 907. Thus, a defendant who does not conceal the danger owes no duty to the plaintiff. *Dowen*, 191 Ill. App. 3d at 907

In *Bucheleres*, 171 Ill. 2d 435, the 21-year-old plaintiff dove off a concrete seawall into Lake Michigan and struck his head on the sand bottom, an act that resulted in quadriplegia. Despite the fact

that the defendant had recently added sand to the area, rendering the water level shallower than it had been previously, the supreme court held that the defendant city had no duty to warn the plaintiff because of the open and obvious danger of diving into waters of an unknown depth. *Bucheleres*, 171 Ill. 2d at 459. In reaching its conclusion, the court conducted the traditional duty analysis reaffirmed in its prior decision in *Ward*, 136 Ill. 2d at 145, which noted that the " ' "known" or "obvious" risk principle' does not mean that 'the duty of reasonable care owed by an owner or occupier to those lawfully on his premises does not *under any circumstances* extend to conditions which are known or obvious to such entrants.' " (Emphasis in original.) *Bucheleres*, 171 Ill. 2d at 450, quoting *Ward*, 136 Ill. 2d at 145 (a case where the court held that defendant K mart, despite the open and obvious nature of the condition on the premises, owed a duty to the plaintiff customer where the customer sustained an injury when he became distracted due to carrying an oversized mirror he had purchased and walked into a concrete pole outside the store).

The *Bucheleres* court applied the traditional duty analysis, which includes "consideration of the likelihood of injury, the reasonable foreseeability of such injury, the magnitude of the burden of guarding against injury and the consequences of placing that burden on defendant." *Bucheleres*, 171 Ill. 2d at 450. The court found that an examination of those factors did not favor the imposition of a duty and concluded (1) the likelihood of injury was slight when the condition in issue is open and obvious; (2) foreseeability of the injury is not dispositive where the danger carries its own "warning" of potential harm; and (3) placing a duty upon the defendant would create a considerable practical and financial burden which might include the curtailment of the public's access to the lakefront. *Bucheleres*, 171 Ill. 2d at 456-58.

■ Applying the above-discussed authority, we conclude that the defendant did not owe the plaintiff a duty to protect him from the open and obvious danger of the rope swing. Under the traditional duty analysis, the first factor weighs in favor of no duty being imposed. The likelihood of injury was slight given that the condition in issue was open and obvious. Just as the plaintiff in the *Hagy* case, the instant plaintiff at least had knowledge of the condition equal to that of the defendant and was able to appreciate the risk involved with height, water, and the rope swing but nevertheless chose to undertake it. The foreseeability of the injury also does not favor a duty being imposed because the danger carries its own warning of potential harm. Lastly, we note that placing the duty on the defendant to remove the rope swing would not create a great practical or financial burden in this case. Nonetheless, given our resolution of the first two factors, and in

light of the outcomes of the above-mentioned cases, we conclude that a duty was not owed.

The cases relied on by the plaintiffs are distinguishable. In *Wind*, the plaintiff slipped and fell on a rubber floor mat at the entrance of the defendant's store. The defendant, who had placed the mat by the door, had knowledge that it "curled and raised away from the floor at times." *Wind*, 272 Ill. App. 3d at 151. The defendant argued that the condition of the floor mat was a known and obvious hazard. In rejecting the defendant's argument, the court applied the rule set forth in *Donoho v. O'Connell's, Inc.*, 13 Ill. 2d 113 (1958), that, if the plaintiff can show that the foreign substance is related to the defendant's business and can offer some slight evidence that the defendant placed the substance on the premises through the defendant's negligence, the court will allow the jury to consider the defendant's negligence without proof of the defendant's actual or constructive notice. *Wind*, 272 Ill. App. 3d at 155, citing *Donoho*, 13 Ill. 2d at 122.

The *Wind* case is not pertinent here because it did not involve an obvious risk and was resolved as a case involving a foreign substance on a store owner's premises. The mere fact that the present defendant may have "created" the condition on the premises did not negate its ability to rely on the "open and obvious condition" doctrine to avoid the imposition of a duty.

In *Carey*, 277 Ill. App. 3d 902, the plaintiff was injured on the defendant's premises when he fell down a staircase that lacked center handrails, in violation of various safety codes that required center handrails for staircases more than 88 inches in width. In the course of affirming the jury's verdict for the defendant and in considering the propriety of various jury instructions that were given, the reviewing court distinguished *Wind* by noting that, unlike *Wind*, where the plaintiff's claim focused on a "substance" relating to the defendant's business and placed on the premises by the defendant, liability in *Carey* was predicated on the dangerous condition existing on the defendant's premises and not on the defendant's negligent activities. *Carey*, 277 Ill. App. 3d at 909. Neither *Wind* nor *Carey* involved an open and obvious condition, and thus neither supports the plaintiffs' position.

In *Pleasant*, 128 Ill. App. 2d 277, the plaintiff was injured when he dove off the defendant's diving board into its pool and hit his head on the bottom. Just prior to the accident, the defendant had "over back-flushed," causing the water level of the pool to go down. In affirming a jury verdict for the plaintiff, the court noted:

> "The pool in question was not a *** random body of water improvised for swimming and diving. To the contrary, it was a

constructed swimming pool equipped with a diving board, a place expressly provided for swimming and diving activities. In such a circumstance we believe the better rule to be that the presence of a diving board is an invitation to use it and an implied representation that it may be used in an ordinary manner with safety. It is reasonable to assume that the water beneath a diving board is sufficiently deep to permit use of the board and avoid injury by striking the bottom of the pool. Corollary is the duty of the owner of a swimming pool equipped with a diving board to provide water beneath it of sufficient depth to dive with safety and to warn persons using the board of any dangerous conditions or instrumentalities." *Pleasant*, 128 Ill. App. 2d at 286-87.

The *Pleasant* case is distinguishable from the case at bar because *Pleasant* did not involve a known risk. In fact, the danger in that case was hidden from the plaintiff in that the defendant had recently backflushed the pool, lowering the water level unbeknownst to the plaintiff. In the present case, the plaintiff knew that the water level was shallow in that he had already swung out into the water on his first attempt. Furthermore, *Pleasant* involved a swimming pool that inaccurately marked the depth of the water, whereas the present case involved lake water with respect to which the defendant made no faulty representations as to its depth. Thus, *Pleasant* does not require a different result in this case.

Likewise, the supreme court's recent pronouncement in *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418 (1998), cited by the plaintiffs in their motion to cite additional authority, is distinguishable. The case did not involve an open and obvious hazard. Rather, it involved an unknown danger stemming from the presence of a submerged pipe, the location of which was variable and could not be detected by swimmers. *Jackson*, 185 Ill. 2d at 426. Consequently, *Jackson* is of no assistance to the plaintiffs' position in the present case.

## SECTION 343A RESTATEMENT (SECOND) OF TORTS

■ The plaintiffs also rely on section 343A(1) of the Restatement (Second) of Torts, which provides:

"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A(1) (1965).

Comment *f* of section 343A(1) explains:

"Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that

he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases, the fact that the danger is known, or is obvious, is important ***. It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances." Restatement (Second) of Torts § 343A(1), Comment *f*, at 220 (1965).

In their motion to cite additional authority, the plaintiffs rely on *LaFever v. Kemlite Co.*, 185 Ill. 2d 380 (1998), which recognized the "deliberate encounter" exception set forth in comment *f* of section 343A of the Restatement. In *LaFever*, the plaintiff was employed as a driver for a disposal company hired by the defendant to haul away "edge trim," a waste product of the defendant's manufacturing process. *LaFever*, 185 Ill. 2d at 384. The edge trim was very slippery and was dangerous for drivers like the plaintiff to walk on. Nevertheless, the defendant often overfilled its containers so that edge trim slid out of the sides and onto the ground. *LaFever*, 185 Ill. 2d at 385. In finding that the defendant owed a duty to the drivers of the disposal company, the supreme court rejected the defendant's argument that a "deliberate encounter" cannot give rise to liability unless there is no reasonable alternative available to the worker and the worker's continued employment is at stake if he refuses to encounter the condition. *LaFever*, 185 Ill. 2d at 393. The court noted that the focus of the Restatement test is not the reasonableness of the entrant's actions. *LaFever*, 185 Ill. 2d at 393. Thus, it was not critical that the employee would actually lose his job if he refused to encounter the danger. *LaFever*, 185 Ill. 2d at 393-94. Rather, the court concluded that the defendant "could reasonably foresee an 'economic compulsion' imposed on the *** drivers to perform the work they were hired to do. [The defendant] therefore had reason to know that these same drivers would deliberately encounter the hazard in order to fulfill their obligations and, consequently, keep their jobs." *LaFever*, 185 Ill. 2d at 395.

We do not find *LaFever* to be controlling of the outcome in the present case. Unlike *LaFever* and the illustrations furnished by the Restatement in comment *f* of section 343A, the present case does not involve a distraction or a deliberate encounter due to an element of economic compulsion. Instead, we find that the instant case is more closely analogous to *Logan* and *Bucheleres*, where there was no economic compulsion enticing the defendants to encounter the danger, and the foreseeability of the injury was not dispositive because the danger carried its own "warning" of potential harm.

*Ralls*, 233 Ill. App. 3d 147, another case cited by the plaintiffs in support of their argument, is also distinguishable. There, the plaintiff, a construction worker, was injured when he slipped on an earthen incline that was covered with snow and ice. This was the shortest path between two adjacent buildings where the plaintiff was working. The Appellate Court, Second District, reversed the dismissal of the plaintiff's common-law negligence claim and found that the trial court erred in finding the defendant owed no duty to the plaintiff. The court relied heavily on the rationale set forth in section 343A(1) of the Restatement and on the supreme court's decision in *Ward*. The court noted that, even though the plaintiff was not "distracted" as was the plaintiff in *Ward*, "it was reasonably foreseeable that workers at the site would use the earthen incline to reach the south door of the blower building rather than use the longer and inconvenient perimeter path." *Ralls*, 233 Ill. App. 3d at 155. Thus, the defendant should have anticipated the unreasonable risk of harm to the defendant despite the obvious nature of the condition. *Ralls*, 233 Ill. App. 3d at 157.

*Ralls*, like *LaFever*, involved a case of economic compulsion. The use of the rope swing in the present case was not similar to the use of the most convenient path at a jobsite in *Ralls*.

A more analogous case is *Alop v. Edgewood Valley Community Ass'n*, 154 Ill. App. 3d 482 (1987), a case not cited by any of the parties. There, the six-year-old plaintiff fell off a playground slide onto the asphalt surface below. The court rejected the plaintiff's argument that the defendant had a duty not to place the slide on such a hard surface. *Alop*, 154 Ill. App. 3d at 488. The plaintiff knew and appreciated the danger of falling from the slide to the asphalt. Moreover, she asserted that she fell from the slide because she turned around in the middle of it. The court indicated that the instrumentality did not become inherently dangerous merely because there was an abuse of it. *Alop*, 154 Ill. App. 3d at 486; see also *Young v. Chicago Housing Authority*, 162 Ill. App. 3d 53, 56-57 (1987) (child was injured when he fell to concrete from monkey bars, and court followed *Alop* rationale, even though child did not misuse instrumentality, noting "same commonsense principle applies to both cases: if you fall, you might get hurt. This is an obvious risk").

The case *sub judice* is similar to *Alop* in that the plaintiff here knew and appreciated the risk of falling from the rope swing in such a manner as to land upside down in shallow water, just as the plaintiff in *Alop* knew and appreciated the danger of falling from the slide to the hard asphalt below. Accordingly, we find that *Alop* lends further credence to our conclusion that the defendant did not owe the plaintiff a common-law duty under the peculiar facts of this case.

## BEACH ACT CLAIM

Next, the plaintiffs contend that the enactment of the Beach Act created a duty in tort beyond any duty that may or may not have been owed under a common-law negligence theory. Citing *Noyola v. Board of Education*, 179 Ill. 2d 121, 129 (1997), *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379 (1982), *French v. City of Springfield*, 65 Ill. 2d 74 (1976), and *Bybee v. O'Hagen*, 243 Ill. App. 3d 49 (1993), the plaintiffs argue that the defendant violated the Beach Act and that such violation was either *prima facie* evidence of negligence or a personal action was implied in the statute.

The defendant argues in response that the Beach Act does not create a private right of action and, regardless, the "open and obvious danger" doctrine bars any action based on the Beach Act because a statute cannot create a duty where none exists at common law.

■ First, the defendant's claim that a violation of a statute cannot create a duty where none exists at common law is at odds with a long line of Illinois cases holding to the contrary. See *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425 (1991); *Ney v. Yellow Cab Co.*, 2 Ill. 2d 74 (1954); *Bybee*, 243 Ill. App. 3d at 53 (no common-law duty of landlord to provide smoke detector, but violation of Smoke Detector Act (Ill. Rev. Stat. 1989, ch. 127½, par. 801 *et seq.* (now 425 ILCS 60/1 *et seq.* (West 1996))) authorized private right of action); *O'Neil v. Krupp*, 226 Ill. App. 3d 622, 627-28 (1992) (no common-law duty to trim foliage near intersection but ordinance requiring such trimming imposed a duty).

The violation of a statute or ordinance designed to protect human life or property is *prima facie* evidence of negligence. *Noyola*, 179 Ill. 2d at 129; *Kalata*, 144 Ill. 2d at 434. The violation does not constitute negligence *per se*, however; therefore the defendant may prevail by showing that he acted reasonably under the circumstances. *Kalata*, 144 Ill. 2d at 435. A party injured by such a violation may recover upon showing that the violation proximately caused the injury, that the statute or ordinance was intended to protect the class of persons to which the party belongs, and that the injury suffered was of the type the statute or ordinance was designed to protect against. *Kalata*, 144 Ill. 2d at 434-35. Conduct violating legislated rules *is* negligent, and if a statutory violation proximately causes an injury of the kind the legislature had in mind when it enacted the statute, the offending party is civilly liable for that injury. *Noyola*, 179 Ill. 2d at 129. Statutes and ordinances designed to protect human life or property establish the standard of conduct required of a reasonable person. *Novola*, 179 Ill. 2d at 130.

The difference between deeming a violation negligence *per se* as

opposed to merely *prima facie* evidence of negligence is that under the negligence *per se* approach when the plaintiff shows the violation of a statute designed to protect human life and also shows that he was of the class it was intended to protect, a conclusive presumption of duty and breach of duty is established, while under the latter approach the violation of the statute is only evidence of duty and breach, nonbinding on the jury. Thus, the defendant can nonetheless prevail under the *prima facie* evidence approach if he can show that he acted reasonably under the circumstances or that a violation of the statute was not the proximate cause of the plaintiff's injury. Thus, if the violation of a statute constitutes *prima facie* evidence of negligence, the case goes to the jury and cannot be dismissed on the basis of the lack of a common-law duty. For example, in *Ney*, there was no common-law duty to remove keys from a car left unoccupied, but the defendant violated a safety statute requiring the removal of keys, so the matter was properly left to the jury to resolve (*Ney*, 2 Ill. 2d at 83-84). Here, we believe that the open and obvious nature of the condition would go to the issue of proximate cause to be resolved by a jury but would not negate a duty's being imposed under the statute.

The defendant's reliance on *Williams v. Chicago Board of Education*, 267 Ill. App. 3d 446 (1994), in support of the proposition that the Beach Act does not provide an implied private right of action under the facts of this case is misplaced. There, the plaintiff's decedent, a nonswimmer, drowned during a high school swimming class. The plaintiff alleged the violation of a health department code requiring a life rope at the edge of the shallow end of a pool. The court simply noted in passing that the Beach Act, the statute promulgating the administrative regulation at issue, did not expressly provide a private right of action for a violation of its terms. *Williams*, 267 Ill. App. 3d at 451.

However, this is irrelevant to our analysis, since a private right of action for a violation can be implied. See *Noyola*, 179 Ill. 2d at 128; *Bybee*, 243 Ill. App. 3d at 51. More importantly, the *Williams* court decided the case on the basis of the immunity afforded a municipality operating a swimming pool as set forth in *Brown v. Chicago Park District*, 218 Ill. App. 3d 612 (1991), and that the plaintiff failed to prove that the violation of the statute was the proximate cause of the decedent's drowning (*Williams*, 267 Ill. App. 3d at 450-51). Thus, *Williams* offers no support for the defendant's position.

The defendant relies on language from *Feldscher v. E&B, Inc.*, 95 Ill. 2d 360 (1983), in support of his claim that, even if a violation of the Beach Act was established here, the "open and obvious" doctrine would still negate the imposition of a duty.

*Feldscher* does not, as the defendant suggests, stand for the proposition that a plaintiff may only maintain an action based on a statutory violation if the defendant owes a duty under the common law. In *Feldscher*, the 7-year-old plaintiff was injured when he and his 10-year-old companion played with fire on the defendant's property, which stored drums containing volatile liquids. A safety statute made it a petty offense for any person to store volatile combustibles " 'in such manner or under such circumstances as will jeopardize life or property.' " *Feldscher*, 95 Ill. 2d at 363, quoting section 1 of "An Act to regulate the storage, transportation, sale and use of gasoline or similar volatile oils" (Ill. Rev. Stat. 1977, ch. 127½, par. 153 (now 430 ILCS 15/1 (West 1996))). The court found that a violation of that statute was not clearly established and that the alleged violation was not the proximate cause of the plaintiff's injury. In *dicta*, the court stated that, even assuming there was a violation, "[i]t would not have the effect of creating a duty to [the plaintiff] where none existed." *Feldscher*, 95 Ill. 2d at 370, citing *Washington v. Atlantic Richfield Co.*, 66 Ill. 2d 103, 109 (1976). We construe this language from *Feldscher* as simply an acknowledgment that, in Illinois, the violation of a statute does not amount to negligence *per se*. The court decided the case on the basis that the defendant's conduct was not the proximate cause of the plaintiff's injuries as a matter of law. *Feldscher*, 95 Ill. 2d at 370. We also note that *Feldscher* cited *Washington* as authority for its proposition that a duty could not be created where none existed. However, the *Washington* court actually found that no duty existed in its case because the injured fireman was not within the class of persons the statute was designed to protect, since the risk was inherent in the occupation. *Washington*, 66 Ill. 2d at 108-09.

The case of *Hoesly v. Chicago Central & Pacific R.R. Co.*, 153 F.3d 478 (7th Cir. 1998), relied upon by the defendant in its motion to cite additional authority, is also distinguishable. There, the court held that a statutory negligence action based on section 5—201 of the Public Utilities Act (220 ILCS 5/5—201 (West 1992)) is susceptible to the "open and obvious condition" doctrine. *Hoesly*, 153 F.3d at 480-81. We note, however, that the statute in *Hoesly* had simply adopted the common-law duty standard of reasonable care. *Hoesly*, 153 F.3d at 480. *Hoesly* did not address the issue of the violation of a regulatory scheme, such as the one involved in the present case, that placed specific duties upon the defendant to do or not to do specific acts. Moreover, *Hoesly* relied upon *Barthel v. Illinois Central Gulf R.R. Co.*, 74 Ill. 2d 213 (1978), as support for its position. That case, however, held only that the defense of contributory negligence was a defense to a cause of action based on the Public Utilities Act (*Barthel*, 74 Ill. 2d

at 224-25) and expressly noted that the regulations at issue did not establish a standard of care different from that of common-law tort. *Barthel*, 74 Ill. 2d at 222; *Hoesly*, 153 F.3d at 480. As the plaintiff points out in the case at bar, the "open and obvious" doctrine is not a common-law "defense" but rather a consideration in the duty analysis. See *Bucheleres*, 171 Ill. 2d at 447. Accordingly, we do not find *Hoesly* to be persuasive in support of the defendant's position.

■ From the foregoing we conclude that a violation of a safety statute can be *prima facie* evidence of negligence such that the case should be submitted to a jury to determine proximate cause and whether the defendant acted reasonably under the circumstances. Turning to the examination of the requirements for a *prima facie* case, we find that the statute at issue, the Beach Act, is clearly designed to protect human life. Section 2 of the Beach Act declares that its purpose is "to protect *** the public *** safety *** by providing for the establishment and enforcement of minimum standards for safety *** for all swimming pools and public bathing beaches now in existence or hereafter constructed or developed and to provide for inspection and licensing of all such facilities." 210 ILCS 125/2 (West 1994).

We also find that the statute, as it was alleged to have been violated, was designed to protect a class of persons to which the plaintiff belonged from the kind of injury suffered. In that regard, Ruden testified that rope swings were considered dangerous and the Department had interpreted them as diving facilities that must meet the minimum depth requirements of the Beach Code, which was promulgated pursuant to the Beach Act. An agency's interpretation of a statute is entitled to deference where it is charged with administering it and enforcing it. *Stroh Oil Co. v. Office of the State Fire Marshal*, 281 Ill. App. 3d 121, 124 (1996). Ruden further testified that the Beach Act required the defendant to obtain a license. Ruden also testified that, upon inspection of the premises for licensure, the Department would have required that the defendant remove the rope swing. Thus, it could be argued that the plaintiff would not have been injured had the defendant complied with the Act and sought licensing of its beach.

In *French v. City of Springfield*, 65 Ill. 2d 74 (1976), an ordinance required the city to obtain a work permit signed by the city clerk and endorsed by the superintendent of streets and the traffic engineer. The city failed to follow its own ordinance and obtain a permit prior to placing barricades and warning devices in the positions they were stationed at the time of the accident. The supreme court found that the city's failure to follow the ordinance was *prima facie* evidence of negligence. The court rejected the city's attempt to analogize the case

to other cases involving auto accidents in which the driver failed to obtain a license pursuant to an ordinance. *French*, 65 Ill. 2d at 80-81. In those cases, the fact that a driver had not had his driving skills tested was not evidence that he was driving negligently at the time of the accident. The court distinguished that line of cases on the basis that in the case before it a permit was needed each time someone sought to obstruct the street, and the collision was the very harm the city council sought to prevent in enacting the provision. *French*, 65 Ill. 2d at 81.

Similarly, in the present case, the defendant would have been required to remove the rope swing had it sought the license it was required to obtain. The defendant's contention that the present case is more like the driver's license cases is unpersuasive. Here, there is a logical connection between the license requirement and the harm sought to be prevented. Before the defendant could legally begin operating a beach, an inspection would have been required, necessitating the removal of unsafe items just as a permit was required in *French* before barricades could be set. Thus, we find that here, as in *French*, the defendant's failure to comply with the license requirement was *prima facie* evidence of negligence.

## RECREATIONAL USE OF LAND AND WATER AREAS ACT

The plaintiff next argues that the Recreational Use of Land and Water Areas Act (the Act) (745 ILCS 65/1 *et seq.* (West 1994)) did not provide immunity to the defendant.

Initially, we note that this was one of the grounds argued for dismissal in the defendant's original motion for summary judgment. The trial court implicitly denied this ground when it denied the defendant's motion for summary judgment with respect to the plaintiff's statutory claim. Because the defendant would have been entitled to have the trial court's subsequent judgment granting its motion for summary judgment on the statutory claim affirmed on any basis appearing in the record, we will briefly address the issue.

■ *Snyder v. Olmstead*, 261 Ill. App. 3d 986 (1994), controls the outcome here. A prerequisite for application of the Act is that the property owner make his property available to the "public." The *Snyder* court rejected the argument that the Act applies to social guests where use of the premises is restricted as to others. *Snyder*, 261 Ill. App. 3d at 991. Here, it is undisputed that the defendant's lake was not open to the public but only to association members and their guests. Thus, the immunity afforded by the Act does not apply.

## COMPARATIVE NEGLIGENCE AND PROXIMATE CAUSE

■ Last, the plaintiffs argue that the motion for summary judg-

ment should properly be denied on the issues of the plaintiff's comparative negligence and proximate cause. For the reasons stated with respect to the prior issue, we will address this issue. We agree with the plaintiff that the issues of comparative negligence and proximate cause should be determined by a jury in this case. See *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378, 393 (1986) (the issue of proximate cause is one for the trier of fact); *Savage v. Martin*, 256 Ill. App. 3d 272, 280 (1993), quoting *Doris v. Bradley*, 76 Ill. App. 3d 890, 892-93 (1979) (issue of comparative negligence "is always a question for the jury unless 'it is established from the undisputed facts that all reasonable minds, in the exercise of fair and earnest judgment, would reach the same conclusion that the plaintiff was contributorily negligent' ").

## CONCLUSION

For the foregoing reasons, we hold that the trial court erred in granting the defendant summary judgment dismissing the plaintiffs' claim setting forth a violation of the statute. Accordingly, we reverse the judgment and remand the cause to allow the plaintiffs to proceed with their statutory claim.

Reversed and remanded.

COLWELL and RAPP, JJ., concur.